Richard E. ANDREWS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14368.

Court of Criminal Appeals of Oklahoma.

May 7, 1969.

Judgment and sentence affirmed.

Clifford K. Cate, Jr., Muskogee, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Jerry H. Holland, Asst. Atty. Gen., for defendant in error.

BRETT, Presiding Judge.

The Plaintiff in Error, Richard E. Andrews, was charged by information in the District Court of Muskogee County on the 24th day of January, 1967, with the crime of attempted robbery with firearms, to which he entered a plea of not guilty. Upon trial before a jury he was found guilty as charged, but the jury was unable to agree upon punishment and left that to the court. Whereupon, the Plaintiff in Error was sentenced by the Judge of the court on the 13th day of February, 1967 to serve a term of 40 years in the State Penitentiary. From that judgment and sentence, his court appointed counsel has perfected this appeal. Hereafter the plaintiff in error will be referred to as defendant, as he appeared in the trial court.

The facts, briefly stated, upon which the information charging defendant with attempted armed robbery are as follows: On October 1, 1966, defendant entered Sid's Pawn Shop situated at 210 W. Okmulgee, Muskogee, Oklahoma, and requested the attendant to show him a .38 special pistol. He then placed a cartridge in the cylinder of the pistol and pointed it at the saleslady. Gary Garrison, who was near by, came to the saleslady's aid when his attention was directed to the defendant pointing the pistol at her.

The gun was subsequently knocked from defendant's hand by Garrison and during the scuffle that ensued, for possession of the gun, the police were called. Defendant was handcuffed by the police, and was transferred to jail. During this ride to jail, defendant made the admissions which furnish the primary grounds for his appeal.

Defendant did not testify at his trial, but instead he demurred to the evidence and rested without offering any defense. The trial court overruled defendant's demurrer.

Defendant's first proposition is stated thusly: "That the trial court erred in admitting the testimony of Earl Garrison relative to certain statements allegedly made by plaintiff in error which materially prejudiced the substantial rights of plaintiff in error."

In his brief defendant recites the various cases resolved by the United States Su-

preme Court which led up to the decision rendered in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Defendant's complaint concerns the testimony of Officer Garrison, who was driving the police car when the defendant was transported to the police station. Upon defense counsel's objection to the testimony, the trial judge excused the jury for the purpose of hearing the arguments of counsel, and the testimony to which the objection was made. After hearing both the arguments and the testimony, the trial judge ruled that the testimony was admissible. We believe the trial judge was correct in his ruling.

The testimony of Officer Garrison concerned what transpired after the defendant was placed in the police car. The officer related that he and his partner, Officer Walters, received the call to go to Sid's Pawn Shop, which they did. Because of a traffic problem, Garrison's partner got out of the patrol car—about a half block from the shop—and proceeded on foot. When Officer Garrison arrived in the patrol car, he went to the pawn shop door and observed the defendant in handcuffs, and his partner brought him to the car to be transported to the police station. Officer Garrison re-entered the driver's side of the patrol car, and his partner got into the backseat with the defendant. The district attorney proceeded to interrogate the witness, Officer Garrison, in the presence of the jury, as follows:

"BY MR. FERGUSON: Q Mr. Garrison, you were previously asked after taking the defendant, Richard Andrews, into custody at Sid's Pawn Shop as to whether there was any statements made by him in the Police car on the way to the Police Station; is that correct?

A Yes, sir.

Q I'll ask you, sir, if at any time you asked Mr. Andrews any questions?

A I didn't ask him anything.

Q Did he make any voluntary statements to you and Mr. Walters?

A Well, he talked all the way to the station.

Q He talked all the way to the station?

A (Nods heads up and down)

Q Will you please tell the Jury, Mr. Garrison—

Q (By the Court) Let me ask you this: Did Mr. Walters ask him any questions?

A No; he didn't; he did not.

Q THE COURT: All right. Go ahead.

Q Would you please tell the Jury exactly what that conversation was from beginning to end on the way to the Police station?

A Well, I think the first thing he said when we got in the car was "Where is my White Port?" And he said, "I had about a fifth of White Port Wine."

Q Did he say about a full fifth?

A He said, "I had about a fifth," he said, "about full" or something like that of White Port. And I said, "Feller, I don't know nothing about your wine because I didn't see it." Then he said, "Why don't you run me around by the bus station and take these things off of me (he was talking about his handcuffs) and let me loose and I'll go on home?" He said, "And I'll go back to Texas." And I says, "I've got to take you to the Station and I ain't even the one that arrested you, I'm just taking you to the Station." And he said, "Well, I need to go back to Texas." And he said, "I wasn't a-going to kill anybody. I didn't aim to kill—I didn't aim to hurt or kill anybody." He said, "I seen this on television and I thought it would work." And I didn't know what he was talking about and I never even answered him.

Q Did he say anything about trying to get any money to go to Texas?

A He says, I'll—

MR. NOLEN: I object to the leading question of the District Attorney.

THE COURT: Yes; sustained.

A   He said, "I just wanted enough money to get back to Texas."

MR. NOLEN: Your Honor, will you please instruct the witness on the stand that he can't make a full answer when the question has been objected to and the objection sustained?

MR. FERGUSON: I'm sorry about that, Your Honor, but would you please proceed, sir.

A   He said, "I just wanted enough money to get back to Texas," He said, "I don't have any intention of killing anybody." Of course, I still didn't know what the deal was all about."

We observe the United States Supreme Court recited in the early part of the opinion in Miranda v. Arizona, supra:

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, *stemming from custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, *we mean questioning initiated by law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (Emphasis added)

In his brief, it is defendant's argument that the placing of defendant in the backseat of the police car was placing him in police custody, which we readily admit. However, defendant then dwells upon those phases of interrogation, described in the Honorable Supreme Court's decision, which became the premise for much of their criticism of certain types of police interrogation. But as we view the record, such interrogation methods were not employed by either police officer, when defendant commenced his urging to be released. Notwithstanding, at that moment no interrogation had been initiated.

We observe later in the Miranda opinion the Court said further, with reference to certain voluntary statements, which might be made by one in custody:

"In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. *Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.* The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. *There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.*" (Emphasis added).

Under the circumstances of this case, we can only view the situation as being one in which the defendant volunteered his statements, as described in that part of the Miranda opinion just recited. Likewise, the defendant's situation in this case is comparable to that in Taylor v. Oklahoma County District Court, Okl.Cr. (1966), 418 P. 2d 112, 114, in which instance Taylor walked into the Los Angeles, California, police station and confessed crimes committed in Oklahoma County; and requested the California police to call the Oklahoma County Sheriff's Office to verify the series of crimes to which he was confessing. In that decision this Court recited its position with reference to a further extension of the "Miranda Rule" concerning voluntary statements, or confessions:

"We are unwilling to extend the rule laid down in the cases above cited, beyond the particular factual situation which gave rise to them."

In this Case, we consider the same to be applicable, and hold that the testimo-

ny of Officer Garrison was properly admitted.

 Defendant's second proposition sets forth: "The evidence adduced at the trial was insufficient to support a finding of guilty." As we view the evidence and testimony offered by the State, such was sufficient to support the verdict of the jury. Defendant's brief cites several cases in support of this proposition, but none of them are applicable to the facts of this case. The charge against defendant was "Attempted Robbery With Firearms," whereas the cases cited in support of this proposition concerned other crimes involving the element of "specific intent" which is not one of the elements of the offense in this case. The rule stated in 22 C.J.S. Criminal Law § 33, meets the requirement of these facts, as follows:

"The intent to commit crime may be implied from established facts. Moreover, the accused is presumed to know and to intend what he does."

and following § 34, provides:

"An unlawful or criminal intent may be presumed from the commission of a criminal act. The presumption may be rebutted by the accused."

In the instant case, the facts were sufficient to establish defendant's attempt to rob, as well as his intent to use the firearm which was introduced into evidence.

After having carefully reviewed the record before the Court, we are of the opinion that there was sufficient competent evidence to submit the case to the jury, and consequently sufficient evidence to support the verdict of the jury. This Court has held many times as was stated in Romjue v. State, Okl.Cr., 375 P.2d 351, and others cited therein:

"Where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty as charged, Court of Criminal Appeals will not interfere with verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts." See cases cited therein.

 Defendant's last proposition contends that the judgment and sentence imposed by the trial court is excessive. The statute under which the defendant was prosecuted provides a maximum sentence of death for the offense of attempted armed robbery, so we fail to see how the sentence of forty years can be considered excessive. This fact coupled with defendant's former convictions, which were made known to the court at the hearing on circumstances either in aggravation or mitigation of punishment, adds emphasis to this Court's conclusion that the punishment assessed by the trial court is not excessive.

We are therefore of the opinion the defendant received a fair trial and the judgment and sentence of the trial court in this case should be affirmed. Judgment and sentence affirmed.

BUSSEY and NIX, JJ., concur.