**Robert Arthur WINN, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–16312.**

Court of Criminal Appeals of Oklahoma.

Sept. 15, 1971.

Don Anderson, Public Defender, for plaintiff in error.

Larry Derryberry, Atty. Gen., Yvonne Sparger, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

This is an appeal by Robert Arthur Winn, hereinafter referred to as defendant, from a conviction in the District Court of Oklahoma County of the crime of Burglary Second Degree, After Former Conviction of a Felony. Trial was had to a jury which found the defendant guilty, and fixed punishment at 27 years in the penitentiary. Judgment and sentence followed accordingly. This Court granted post conviction relief to allow an appeal.

The evidence at the trial conducted on October 21, 1964, revealed that on July 21, 1964, George Thompson was in charge of the Cities Service Warehouse at 310 Southeast Second Street in Oklahoma City. That evening, he secured the place about 5:15 p. m., by locking all the doors and turning on the ADT alarm system. Shortly after 3:00 a. m. the next morning, he received information about a break-in, and went to the warehouse, where he found the office had been ransacked and glass in a door between the office and warehouse proper broken, as well as glass in an overhead door in the warehouse also broken.

Carmon Schiller testified that on that date he was employed as a service man for ADT Protection Service, which provided burglar alarm service for the warehouse. About 2:40 a. m., on July 22, 1964, the alarm from the warehouse sounded, and he notified police and went to the scene. When he arrived, the police were there, and he unlocked the door and let them in. He heard a shot fired just as he arrived. Officers entered the warehouse while Schiller remained at the office door, and soon returned to the office with the defendant in custody. He heard no conversation between the defendant and the officers.

Officer Baldwin, Oklahoma City Police Department, testified that on July 22, 1964, he was riding patrol with his partner, Officer Jackson, and answered a silent burglar alarm call at the warehouse, arriving about 2:45 a. m. Baldwin saw the defendant rummaging through the office desk, and called out, whereupon the defendant tried to run and crawl through the broken window of the outside to the right of defendant. The ADT man arrived at this point, and unlocked the doors. Baldwin then entered the warehouse and discovered defendant sitting on a case of oil. Jackson entered the warehouse and they handcuffed defendant. Glass was broken out of an overhead door, and a pry bar, flashlight, and padlock were on the floor. The officer asked the defendant what he was doing there; the defendant replied that he was looking for money. He was asked if anyone was with him, and he replied no. This was before the officers picked up the pry bar. Defendant then admitted the pry bar to be his.

Officer Jackson's testimony did not differ substantially from that of Baldwin. Jackson also testified that defendant was asked why he broke in—was it for money, to which the defendant replied "Yeah."

Defendant did not testify nor offer evidence in his behalf.

Prior to Baldwin's testimony stated above, a hearing was had outside presence of the jury relating to admissibility. Baldwin's testimony and that of Jackson did not differ materially from their testimony as given to the jury.

Defendant testified outside the presence of the jury that as he was arrested by Baldwin he was immediately handcuffed, hands behind, and that Jackson (Tr. 109) held him from behind by the arms, while Baldwin said if he had known the intruder was the defendant, he would have shot him.

They then took defendant to the office where Schiller was. Baldwin hit the defendant in the stomach about six times with the tire tool. Pursuant to their interrogation, defendant said no one was in the warehouse with him. Defendant denied telling the officers he had entered the warehouse for money. As defendant was being taken to the scout car, Baldwin remarked to another officer:

" * * * [defendant] said that [I] had whipped [him] in [the] stomach, and say, 'haven't any of you all seen me hit him, have you?' and they all answered 'No.' " (Tr. 98)

Baldwin denied that either officer had struck defendant with anything. Jackson testified that Baldwin had the tire tool at all times and had never struck defendant. Jackson also testified that Baldwin never did make any remark to other officers concerning whether they had seen him strike defendant.

Testimony of Officers Anthony and Johnson (Tr. 80–92) related to other state-

ments allegedly made by defendant in interrogation, all of which the court ruled inadmissible by reason of failure to give the Miranda warning. (Tr. 118)

In the second phase of the trial, it was shown that the defendant had previously been convicted of one Larceny, and twelve Burglaries, Second Degree.

The first proposition contends that the verdict is not supported by the evidence. We have repeatedly held that it is the exclusive province of the jury to weigh the evidence and to determine the facts, and when the evidence is based upon probable testimony, the reviewing court will not interfere with the verdict. Bryant v. State, Okl.Cr., 478 P.2d 907.

██ The next proposition asserts that the punishment is excessive. Suffice it to say that this is the fourteenth Felony conviction for this defendant, and that the sentence imposed does not shock the conscience of this Court.

The final proposition alleges that the trial court erred in not submitting the question of voluntariness of the confession to the jury. We note that in the trial court the Honorable John A. Brett, who at the time of the trial was recently retired from this court, conducted an Evidentiary Hearing outside the presence of the jury. After hearing the evidence, the court made the following ruling:

"The Court is of the opinion that this evidence should be admitted up to the point of the taking him into the office for the reason that it is part of the res gestae conversation had with the officers in the back of the room of the warehouse, to the effect of 'What are you doing in here?'"

"Says, 'I'm looking for money.'"

"'Anyone in here with you?'"

"'No.'"

"That is a spontaneous response to the officers' inquiry which the officer had a right to make in both regards. It is a part of the res gestae, and the Court will admit that evidence in the record as part of the res gestae because of its spontaneity." (Tr. 116)

The court further stated that they doubted the validity of defendant's testimony that he was beaten. The court ruled inadmissible any statement made by the defendant after he was removed from the room in which he was arrested.

██ We are of the opinion that the ruling of the trial court was proper. The statements made by the defendant were admissions rather than a confession. In Hathcox v. State, 94 Okl.Cr. 110, 230 P.2d 927, we stated that declarations, to be part of res gestae, need not be precisely coincident in point of time with principle facts, and if they spring out of it, they shed light upon and tend to explain it, they are voluntary and spontaneous, or they are made at a time so near it as to preclude ideas of deliberation or fabrication; then they are to be regarded as contemporaneous, and admissible.

It is apparent to this Court that the admissions made by this defendant were spontaneously made to the officers who were in the process of placing him under arrest at the scene of the crime. Inasmuch as the admissions were part of the res gestae, there was therefore no determination to be made by the jury inasmuch as theirs is a province of fact-finding and does not rule upon matters of law. We further note that the defendant did not properly protect the record by timely objecting to the testimony of the defendant's statements.

BRETT and NIX, JJ., concur.