Coleman LOTT, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–15811.

Court of Criminal Appeals of Oklahoma.

Nov. 23, 1971.

Andrew T. Dalton, Jr., Public Defender, Tulsa County, for plaintiff in error.

Larry Derryberry, Atty. Gen., Yvonne Sparger, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

Coleman Lott, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Tulsa County, Oklahoma for the offense of Uttering a Forged Instrument, After Former Conviction of a Felony; his punishment was fixed at ten (10) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Tom Osborne testified that he was the manager of the Duncan Linen Supply Company, and that a number of checks had been stolen from his place of business during the month of June, 1969. He identified State's Exhibits One and Two as belonging to his company, and as

the checks which had been stolen. He testified that the signature which appeared on the checks was unauthorized.

Taft Peevy testified that he operated a liquor store in Tulsa County, and that some time on the afternoon of July 3, 1969, a person, whom he identified in court as the defendant, entered his store and presented a check to be cashed payable to "Harry Russell Clow," drawn on the Duncan Linen Supply. He further testified that he recognized the defendant, because on a prior occasion the defendant had cashed a check at his store. He asked the defendant for identification, and when the defendant could produce none, Peevy moved toward the telephone to call the police, and the defendant hurriedly left the store, leaving the check behind.

Officer Short testified that at approximately 8:00 o'clock on the evening of July 3, 1969, he was dispatched to a grocery store to investigate a man trying to pass a bad check. Upon arriving at the store, he observed the defendant standing out in front of the grocery store. As the officer pulled up next to the curb, he observed the defendant drop something behind his back. He asked the defendant if he had dropped something behind him, and the defendant replied in the negative. The officer dismounted from the police unit, walked around the curb and picked up a yellow piece of paper, which proved to be a second check made out to Harry Russell Clow, drawn on the Duncan Linen Company. He advised the defendant of his "Miranda" rights, placed the defendant under arrest, and transported him to the city jail.

Buford Blackshire testified for the defendant that on the day in question he and the defendant spent the entire day doing yard work. On cross examination, he testified that he and the defendant were good friends, and that they lived at the same house. He further testified that he had been convicted of uttering a forged instrument, and of numerous misdemeanor convictions.

Dr. Cecil Oakes, Jr. testified that he treated the defendant at the emergency room at Hillcrest Hospital on June 16, 1969. Among other injuries, he testified that he sutured a cut on the left check, which was approximately eight centimeters in length. He testified that in his opinion, the scar would still be visible after two or three weeks from the time it was repaired. On cross examination, he testified that the rate of healing varies between individuals, and that the visibility of the scar would depend upon various factors.

Mr. Taft Peevy had previously testified that he did not remember a scar on the defendant's face.

Officer Short was recalled in rebuttal and testified that on the evening in question he did not notice any unusual scar on the defendant's left check. Deputy Kirkland testified in rebuttal that he mugged the defendant on July 5, 1970, and a photograph which was taken on that date was introduced into evidence. Buford Blackshire was recalled in surrebuttal, and testified that in July of 1969, the defendant had a definite scar on his left check.

■ The first proposition asserts that the defendant was prejudiced by the jury's seeing him outside the courtroom in the hall in the custody of a uniformed police officer. We have examined defendant's citations of authority, and are of the opinion that the same are distinguishable from the case at bar. In French v. State, Okl.Cr., 377 P.2d 501 (1962), the defendant was brought into the courtroom shackled and handcuffed, while in Moore v. State, Okl. Cr., 430 P.2d 340 (1967), the jurors toured the jail during the noon recess, and observed the defendant behind bars; whereas in the instant case, the defendant was not handcuffed, he was in civilian clothes, and he was not restrained in any way, and he was simply being directed to the courtroom by a uniformed officer. We observe that after hearing defendant's motion for mis-trial, the trial court took a recess, examined French v. State, supra, and ruled that no prejudice was attached. We are of

the opinion that the Record supports the trial court's findings. We, therefore, find this proposition to be without merit.

■ The next proposition contends that the trial court erred in allowing the in-court identification of the defendant after conducting an evidentiary hearing. After hearing the evidence at the evidentiary hearing, the trial court ruled:

"THE COURT: All right. We will find that pursuant to the requirements in Thompson v. State, that you have cited, [Okl.Cr.] 438 P.2d 287, where they cited Wade v. United States, that at this critical stage of a criminal proceeding, the defendant was not advised that he could be represented at the line-up and he did not effectively waive such right, so that there was a primary illegality about the line-up. However, after listening to Mr. Peevy, I do not believe that this primary illegality was exploited to the point that it taints his in-court identification. I believe he identifies this defendant from the fact that he had had a prior encounter with him some two weeks before with another check and this has caused his memory to be strengthened to the point that he now remembers him independent of any line-up identification. It appears that at the time of the line-up, that his memory of the person who appeared in his store the day before was of such strength that he immediately recognized him, and it was because of that and not the manner in which the line-up was conducted which caused him to immediately identify the defendant when Mr. Peevy walked through the door, as has been testified. So based on that, we think that the means of identification is sufficiently distinguishable to be purged of any primary taint." (Tr. 74)

We have carefully considered the evidence presented at the evidentiary hearing, and are of the opinion that the trial court did not err in considering the totality of the circumstances and ruling that the in-court identification was not tainted. See Mallard v. State, Okl.Cr., 490 P.2d 1383.

■■ The next proposition asserts that the trial court erred in allowing evidence of subsequent offenses, thereby violating the defendant's rights against "double rapping and double jeopardy." The defendant candidly admits in his brief that the testimony that the defendant attempted to pass the same type of check at another establishment on the same day was admissible as part of a common scheme or plan as an exception to the general rule. The defendant states:

"The error lies not in the rule of law, but in the fact that the State chose to carve this other event out for prosecution. It is further requested that the Court take judicial notice of the fact that the appellant was convicted and has now appealed that other prior conviction.

"Simply stated, the State cannot on the one hand maintain that there was a single criminal course of conduct, transaction, or scheme, and on the other hand, separate the occurrences into separate triable offenses. To do so violated the rights of the defendant as against 'double rapping and double jeopardy.'"

We are of the opinion that the prior conviction is not a bar to the conviction in the instant case as "double rapping or double jeopardy" in that two separate distinct offenses were committed. In the recent case of Tucker v. State, Okl.Cr., 481 P.2d 167, we stated:

"We are of the opinion that the fact that crimes were committed in rapid succession does not negate the ultimate fact that separate crimes were committed. To hold otherwise would open the door for persons to commit any number of crimes simultaneously, knowing they could only be punished for one."

We further observe that the introduction of the second check as evidence of a common scheme or plan was proper in that the checks were similar, and that the defendant attempted to cash it on the same date, within hours after the offense for which he is charged in the instant case.

■ The fourth proposition contends that the trial court erred in not declaring a mistrial after the "evidentiary harpoon" was interjected by the rebuttal witness, Kirkland. The Record reflects the following questions and answers were asked and given:

"Q. Very well. Do you recall upon what day this investigation was performed in this case?

"A. Yes, sir. We remugged Coleman Lott the 5th day of July, 1969." (Tr. 179)

The defendant contends that the answer constituted an "evidentiary harpoon," which has been condemned by this Court time after time. In a similar case, Hattensty v. State, Okl.Cr., 321 P.2d 710 (1958), a police officer made a statement to the effect that "I have handled Mr. Hattensty before and since." In that case, we stated:

"It has been held that similar remarks may not constitute sufficient grounds for reversal where evidence of guilt is clear, but will be considered in connection with the contention that the punishment was excessive as tending to prejudice the defendant with the jury."

In the instant case, we observe that the evidence of defendant's guilt is clear, and further, that the defendant elected to have the trial court rather than the jury to fix the punishment, and that the trial court assessed the minimum provided by law. We, therefore, are of the opinion that the remarks by the police officer do not constitute sufficient grounds for reversal.

■ The fifth proposition asserts that "the court erred in allowing the testimony of Officer Short, and the evidence obtained by him, as such, was in violation of the constitutional rights of the appellant." The defendant argues under this proposition that the interrogation of the defendant and the physical evidence obtained were had absent the warnings required in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Record reflects that Officer Short was dispatched to the grocery store where someone was attempting to pass a bad check. The defendant, who fit the description that had been given to the officer, was standing in front of the grocery store upon the officer's arrival. The officer noticed the defendant drop something behind his back, and immediately, he asked the defendant to sit in the police unit. The officer picked up the wadded piece of paper, which turned out to be a check dropped by the defendant; he then asked the defendant if he had dropped it, to which the defendant replied, "No." The trial court thereupon ruled that, "Anything up to this time is admissible, and any subsequent statements after this would be inadmissible, unless he had been given his Miranda warnings." The police officer thereupon turned the defendant over to another officer, who went inside the grocery store and had a discussion with the manager. He returned to the police unit and advised the defendant of his "rights," and placed him under arrest. We are of the opinion that the ruling of the trial court was proper. The statements made by the defendant could not be considered admission or a concession in that the defendant denied that he dropped the check. We are of the opinion that the defendant's statement, "No," was a spontaneous response to the officer's inquiry which the officer had a right to make, and as such, was properly admitted as part of the res gestae. See Winn v. State, Okl.Cr., 488 P.2d 1338.

■ The final proposition asserts that the sentence is excessive. The defendant first presents under this proposition the theory of "double rapping" as argued in Proposition Number Three. For the reasons set forth in Proposition Number Three, we do not deem it necessary to further discuss this theory. Defendant next argues that the statute barring defendant from having concurrent sentences, in the event he does not plead guilty, all at the same time, is unconstitutional as being in violation of the constitutional rights of the defendant to a trial by jury, and further, that it denies the defendant the equal protection

of law that is guaranteed by the Fourteenth Amendment of the Constitution of the United States. We observe that the defendant does not cite authorities to support this contention. To the contrary, see Handley v. Page, D.C., 279 F.Supp. 878 (1968), aff'd, 10 Cir., 398 F.2d 351, cert. den., 394 U.S. 935, 89 S.Ct. 1212, 22 L.Ed. 2d 466.

In conclusion, we observe that the Record is free of any error which would justify modification or require reversal. The judgment and sentence is accordingly affirmed.

BRETT, J., concurs.