Nicholas Franklin WORCHESTER,
Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–534.

Court of Criminal Appeals of Oklahoma.

June 4, 1975.

Nicholas Franklin Worchester, pro se.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Harold T. Garvin, Jr., Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant, Nicholas Franklin Worchester, hereinafter referred to as defendant, was charged by information, tried before a jury, and convicted of the offense of Burglary in the First Degree, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1431, in the District Court, Oklahoma County, Case No. CRF–74–721. The defendant's punishment was assessed at one hundred (100) years' imprisonment in the care and custody of the Department of Corrections of the State of Oklahoma. From the judgment and sentence of the trial court, the defendant has perfected a timely pro se appeal to this Court, after having requested that the public defender be discharged and requesting permission to represent himself on appeal, which request was granted.

Vickie Leah Rein, the complaining witness, stated that she was a married person residing at 8300 South Walker in Oklahoma City. At 1:30 a. m. on the 21st of February, 1974, while alone in her home, she was awakened by some noise at the rear of her home. Her house was locked. Upon investigating, she saw a window at the back of the house being

raised. She then inquired if it was her husband (a night postal employee) and asked if he had forgotten his key. The person responded that it was her husband, and directed her to open the door. Realizing that the voice was not that of her husband, she informed the intruder of her intent to call the police whereupon she observed a hand break through the glass of the back door. To escape, she fled out the front door. She heard someone following her through the house as she fled. She ran to a neighbor's home seeking assistance, but she was caught and beaten by her pursuer. Mrs. Rein further testified that she was then dragged by the hair and carried to a pasture adjacent to the neighbor's home. The pursuer alternately beat her with his fists and tried to choke her. The victim eventually managed to escape her assailant's grasp and ran to the safety of her neighbor's home. The victim identified the defendant as her assailant, and further testified that she did not give the defendant consent to enter her home.

On cross-examination the witness stated that she did not see the man enter her home but heard him come in and chase her through the house. She suspected the man across the street to be her attacker because his physical appearance was similar to her attacker's. She testified it was very dark and rainy on the evening in question but that there was good illumination in the neighbor's back yard and lights were on in the victim's house.

The next witness was Mrs. Gibson, the neighbor of the victim. Mrs. Gibson testified that on the date and time in question she heard screaming and got up and ran to her front door. When Mrs. Gibson reached the door and opened it, she could see the complaining witness being pulled on the ground by a form she could not identify. The witness then stated that after a period of silence she heard the victim start screaming again and then saw her run back up her driveway. The victim was then admitted into the house, being muddy, bloody and hysterical.

Tom Bevel of the Oklahoma City Police Department stated that on the date in question he went to the victim's house and conducted an investigation. He took photographs both inside and outside of the victim's house, showing glass broken out of the back door and a screen which was removed from one of the windows. Both photographs were then admitted into evidence without objection. Also, photographs of the victim were admitted to show the identity and physical condition of the victim as the witness, Mrs. Gibson, had seen her that date.

The State recalled Vickie Leah Rein and she testified further that on the night in question she observed a dark brown corduroy coat and the defendant's arm breaking into her house. The same man in a corduroy coat grabbed her in the yard of her neighbor's house. It was at this time that she saw the man's face. The voice of the man directing her to open the door of her house was the same as the voice she heard during the course of the subsequent attack. She further stated that she did not see anybody enter the house, but she did see the arm come through the glass and a man hitting the door. At the conclusion of this evidence the State rested.

The defense demurred to the State's evidence and was overruled. Whereupon, the defendant rested.

Following instructions to the jury and argument of counsel, the case was submitted to the jury resulting in a guilty verdict. Upon return of the jury to open court, the trial judge made a record that the jury sent him a note which he had answered. The court reporter filed such note as "Court Exhibit A."

At the second stage of the trial the defense moved the court to strike from the information a second degree rape charge due to the fact that the defendant was a juvenile of 16 years of age at the time of the offense. The trial judge overruled the motion stating that the defense's oral motion without supporting evidence could not

be used to attack a prima facie valid judgment. The parties then stipulated to the former offenses, that they were filed against the defendant, that the convictions were final, and that the defendant was represented by counsel. Notwithstanding the stipulation of his attorney, the defendant asserts that at the time of his conviction in Pontotoc County for the offense of Rape in the Second Degree he was the age of 16 and that judgment and sentence was void.

 The defendant first contends that the State failed to submit any evidence that the defendant did break and enter the home of the complaining witness. The complaining witness first stated that her house was locked and that she did not give consent to the defendant to enter. While investigating the late night noises, she saw the window being opened and the defendant's arm come through the glass of the back door. Further, she heard the defendant chase her through the house as she ran to escape. Photographs of the back door with glass broken out of it, as well as a photograph of a torn screen from a window on the back of the house, were also admitted into evidence. The language of the charging statute, 21 O.S.1971, § 1431, reads in part as follows:

"Every person who breaks into and enters in the night time the dwelling house of another, in which there is at the time some human being, with intent to commit some crime therein, either:

"1. By forcibly bursting or breaking the wall, or an outer door, window, or shutter of a window of such a house or the lock or bolts of such door, or the fastening of such window or shutter; or,

\* \* \* \* \* \*

". . . is guilty of burglary in the first degree."

We have held that the physical force necessary to constitute "a breaking" as an element of burglary may be any act of physical force, however slight, by which obstructions to entering are forcibly removed.

See, Fish v. State, Okl.Cr., 505 P.2d 490 (1973) and Yeargin v. State, 54 Okl.Cr. 34, 14 P.2d 431 (1932). The testimony and evidence as stated in the record of the case at bar are clearly sufficient to support the conviction of Burglary in the First Degree. The trial court properly overruled the defendant's demurrer at the close of the State's case, there being sufficient evidence to support the charge in the information.

 The defendant's second proposition is that he was forced to defend against two different offenses, Burglary and Assault. We find the pertinent portion of the charging statute above quoted the "intent to commit some crime therein," which must be proved by the State is fatal to the defendant's argument. The element of "intent to commit some crime therein," does not mean that a crime must be perpetrated by the defendant. This Court has stated that the defendant need only have the requisite criminal intent at the time of unlawful entry. See, Logan v. State, 95 Okl.Cr. 76, 239 P.2d 1044 (1952). From the actual commission of a crime, intent may be rebuttably presumed. 22 C.J.S. Criminal Law § 34, Andrews v. State, Okl.Cr., 455 P.2d 741 (1969). Hence, in the case at bar, the intent necessary to sustain a conviction under the statute may be proved by evidence of the commission of a crime commensurate with the breaking and entering. See, Shields v. State, Okl.Cr., 490 P.2d 1390 (1971), wherein we quoted with approval Ryans v. State, Okl.Cr., 420 P.2d 556 (1966):

"Intent as an essential element of an offense is a question for the jury to be determined from what the accused does and says, and all the facts and circumstances of each case."

See also, Cherry v. State, Okl.Cr., 276 P.2d 280 (1954). We find the testimony and evidence concerning the beating administered to the victim by the defendant to be part of the res gestae of the charge of Burglary in the First Degree, the victim being placed in fear and apprehension of

her bodily safety at the outset of the defendant's acts of breaking into her home. It matters little that the location where the assault was physically culminated was not within the house per se, since the events which transpired were part of the same criminal transaction. The beating is an act, fact, or circumstance arising from the commission of the offense of burglary which is admissible in evidence as constituting the res gestae of the burglary despite its independent legal significance as a crime in its own stead. See, Martin v. State, Okl.Cr., 449 P.2d 275 (1969) and further, Moulton v. State, Okl.Cr., 476 P.2d 366 (1970), wherein we stated:

". . . The general rule in this state is that when a defendant is put upon trial for one offense he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone and the admission of evidence of other crimes, either prior or subsequent to the offense for which he is on trial is inadmissible. However, evidence of separate and similar offenses is admissible when it is material and proper to show (1) motive, (2) intent, (3) absence of mistake or accident, (4) identity of person charged with the commission of the crime for which an accused is put on trial, and (5) common scheme or plan embracing the two or more crimes so related to each other that proof of one tends to establish the other."

In the instant case the identity of the defendant was made when the victim was captured by the defendant in the neighbor's back yard. Thus, the introduction of testimony and evidence concerning the beating was also admissible to establish the identity of the defendant, his motive and intent, as well as the absence of mistake or accident.

The defendant's third and fourth propositions are asserted together as they have commonality in subject. The defendant contends this his sentence of One Hundred (100) years' imprisonment is void for the following reasons: (1) that he did not stipulate to the former conviction; (2) that he was denied his right of confrontation of the State's witnesses, or on the issue of former conviction; (3) that the trial court effectively told the jury the defendant was pleading guilty to the former conviction which was in derogation of defendant's plea; and, (4) that as a result of the aforementioned three occurrences he was denied effective assistance of counsel.

Defendant's first contention must be rejected in light of the following excerpts from the record wherein it appears:

"(Whereupon, the following proceedings were had outside the hearing of the Jury.)

"MR. GEB: At this time the State of Oklahoma and the Defendant stipulate that the two charges enumerated in the information in case number CRF–74–721 and Oklahoma County, Oklahoma, in which said information recites that Rape in the second degree was committed in the District Court of Pontotoc County, Oklahoma, number 4452. That said Defendant is one and the same person as set forth in this record and this charge on this conviction. That said Defendant is one and the same person as the charge and conviction of Larceny of an automobile committed in Pontotoc County in case number CRF–71–20, listed on the second page of the information as CRF–74–721.

"MR. BREWER: Comes now the Defendant—

"THE COURT: You stipulate to that?

"MR. BREWER: But one more note of my record. That the Defendant stipulates to the two charges, Rape in the second degree and Larceny of an automobile only as to the charges that were filed and after the ruling of my objection declaring the Defendant at this time was a minor child of sixteen years of age.

"THE COURT: You are stipulating though?

"MR. BREWER: To the information that the charges were filed.

"THE COURT: Convictions were final, he was represented by a lawyer?

"MR. BREWER: Yes, sir.

"THE COURT: All right.

"(Whereupon, the following proceedings were had in the hearing of the Jury.)

"THE COURT: All right. We have a stipulation in the case, Ladies and Gentlemen of the Jury. There's a stipulation to this effect: That the Defendant Nicholas Franklin Worchester and the State stipulate that the allegations set forth in page two of the information, the State alleges he has heretofore been convicted of two separate felonies. They have stipulate (sic) that this Defendant, Mr. Rochester, was convicted of Rape in the second degree on the 9th day of May, 1963, in the District Court of Pontotoc County, State of Oklahoma. That he is one and the same person that was convicted in that case.

"It is further stipulated that this Defendant is the same person that was convicted in Pontotoc County on the 22nd day of September, 1970, of the felony of Larceny of an automobile. It is further stipulated between the parties that these two convictions, these two felony convictions, the Defendant was represented by counsel at the time he was convicted, and that these convictions are final and no appeal is pending from said convictions.

"This Defendant that is on trial is the same person that was convicted in those two cases. With that stipulation, does the State rest?

"MR. GEB: State rests, Your Honor.

"THE COURT: When the parties stipulate to a set of facts, Ladies and Gentlemen, you don't have to hear anymore evidence on that. They agree that that is what the facts are. You don't have to hear anymore evidence about that matter.

"Now, Mr. Brewer, the State has rested. Do you wish to put on any further testimony?

"MR. BREWER: No, sir, Your Honor. Defense rests." (Tr. 73–76)

This excerpt clearly illustrates the defendant stipulated to the former conviction.

■ Defendant's second contention is patently frivolous in view of the fact that he stipulated to the former conviction and thus he waived his right to confrontation of the State's witnesses on this issue.

■ The defendant's third contention is without merit as we find the trial judge correctly adhered to the procedure regarding proof of former convictions in the second stage of the trial. See, Riddle v. State, Okl.Cr., 478 P.2d 357 (1970), appeal after remand, 506 P.2d 1405 (1973).

■ The defendant's fourth contention is that he was denied effective assistance of counsel. In dealing with a similar proposition in Johnson v. State, Okl.Cr., 476 P.2d 395 (1970), we stated:

"The defendant further argues that because of his court-appointed counsel's failure to object to the remark of the witness that he was denied adequate representation of legal counsel. We cannot say that this event in and of itself would indicate inadequate legal representation. A defendant in a criminal prosecution for whom an attorney is appointed by the court is entitled to a fair trial, not to a perfect trial, and services of appointed counsel meet the requirements of the due process clause of the Fourteenth Amendment where appointed counsel is a member in good standing of a bar, gives the defendant his complete loyalty, serves defendant in good faith to the best of his ability, and his service is of such character as to preserve the essential integrity of the proceedings."

After a review of the entire record we find the defense attorney's actions did not reduce the trial to a sham, farce, or a mockery of justice. We, therefore, find

this contention to be without merit. For the above stated reasons, we find the defendant's third and fourth propositions to be without merit.

Defendant's final proposition asserts he was denied his Sixth Amendment right to a fair trial where the trial court communicated with the jury while they were in their deliberation in that the judge replied to a note that the jury had sent to the trial court.

The record reflects that after the jury had retired for deliberation, and while deliberating, the jury sent the judge a note which was subsequently responded to by the judge and returned to the jury. The record further reflects that the note from the jury and the response by the judge both were on one sheet of paper which was admitted into evidence as Court's Exhibit A. The contents of the exhibit are as follows:

"Please define 'entering'—must the whole body come into the house.

"Could we get the transcript of this portion of the record?"

[Answer]

"The instructions contain all the law you need to decide this case."

In dealing with a similar proposition in Wilson v. State, Okl.Cr., 534 P.2d 1325 (1975), we stated:

"This Court holds that the better view is when a communication between judge and jury occurs, after the jury has retired for deliberation, a presumption of prejudice does arise, but that such presumption may be rebutted in other ways in addition to the procedure mandated in Green, [v. State, Okl.Cr., 281 P.2d 200]. The presumption may be rebutted by proper and sufficient evidence at a Motion for New Trial, as specified in Green, and also such a presumption may be overcome if, on appeal, this Court is convinced that on the face of the record no prejudice to the defendant occurred.

\* \* \* \* \* \*

"In certain circumstances it is not necessary to consider if the communication is reversible error or harmless error. In such circumstances no error occurs due to the fact that such a communication is not of the type the statute is intended to prohibit. For example, the bailiff communicates with the jury when he tells them to go to dinner; however, this is not a communication the statute intended to prohibit."

In the instant case the court should have called the jury into open court to reply that the judge could not give further instructions, and failure to do so resulted in a technical violation of the statute. However, this Court, after a complete review of the record before us, finds no prejudice resulted in the technical violation of the statute and any error was harmless. See, Wilson v. State, supra. Therefore we find the defendant's final proposition to be without merit.

In conclusion, we observe the record is free of any error which would justify modification or reversal. The judgment and sentence is accordingly affirmed.

BUSSEY, J., concurs.

BRETT, P. J., concurs in part and dissents in part.

BRETT, Presiding Judge (concurring in part and dissenting in part):

I concur that the evidence is sufficient to sustain the conviction, but I dissent to the use of the sixteen year old convictions to enhance punishment. Therefore, I would modify the sentence imposed.