**Wayne Ray GOWLER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

No. F–77–636.

Court of Criminal Appeals of Oklahoma.

Nov. 22, 1978.

Rehearing Denied Jan. 31, 1979.

John T. Elliott, Public Defender, John M. Stuart, Jim Pearson, Asst. Public Defenders, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

OPINION

CORNISH, Judge:

Wayne Ray Gowler, hereinafter referred to as the defendant, was charged with the crime of Obtaining Merchandise by Means and Use of a False and Bogus Check, in violation of 21 O.S.1971, § 1541.2. The defendant was found guilty by a jury in Oklahoma County District Court, Case No. CRF–76–4641, and his punishment was assessed at three (3) years' imprisonment.

The defendant, using the name of John L. Deusner, wrote a number of false and bogus checks at various businesses and establishments during a three-day check writing spree in December of 1975. On January 16 and 19, 1976, the Oklahoma County District Attorney's Office filed four charges against the defendant based on four checks written by him during this three-day period. The defendant was arrested in Arizona on March 19, 1976, and was transported to Oklahoma County on April 20, 1976. The defendant remained in Oklahoma County jail while he stood trial in federal court on a charge of Giving False Information to a Federally Insured Bank, as a result of his activities in December, 1975. He was committed to a federal penitentiary on July 2, 1976. The defendant was thereafter borrowed from federal custody and returned to Oklahoma County on November 17, 1976, to face trial on the four charges which had been filed against him. On December 15, 1976, the defendant entered a plea of guilty to each of the four charges. There had been no negotiated plea. Although First Assistant District Attorney James R. McKinney recommended four ten (10) year sentences to run consecutively, Judge Joe Cannon sentenced the defendant to serve three ten (10) year suspended sentences to run concurrently and a two (2) year deferred sentence with restitution to commence six months after release from the federal penitentiary. On December 16, 1976, Mr. McKinney filed an information against the defendant in this case, CRF–76–4641 and one in CRF–76–4640, alleging the writing of two false and bogus checks arising from the same weekend check writing spree. On February 11, 1977, a hearing on a motion to dismiss these two charges was held before Judge Cannon. The judge entered an order dismissing the two cases, but shortly thereafter changed his mind and vacated the order.

Another hearing on a motion to dismiss was held before Judge David M. Cook on February 22, 1977. At this hearing, First Assistant District Attorney James R. McKinney testified that at the time the defendant entered a blind plea before Judge Cannon on December 15, 1976, with regard to the initial four charges, Mr. McKinney recommended that the defendant receive four ten year consecutive sentences. Mr. McKinney did not recall whether or not at the time of sentencing he made the statement that he would continue to file charges until the defendant was in prison. He did state, however, that it was the current intention of the District Attorney's Office to file until the defendant went to the penitentiary. He commented that at the time the initial four charges were filed, the District Attorney's Office did not know the total number of checks the defendant had written, but a number of checks had come in and for most of the checks his office knew that the merchant had the check. Mr. McKinney also testified that he doubted the checks upon which the current charges were based were in the District Attorney's Office by January 19, 1976. However, he contacted a number of merchants who he was aware had checks, and some of them sent in their checks. He was aware that there was a large number of checks which were outstanding that the defendant had written.

Judge Joe Cannon testified that when the defendant appeared before him on a blind plea on December 15, 1976, and he handed down the sentence, Mr. McKinney made a statement to the effect that he wanted the defendant to do time in the penitentiary and would keep filing charges until the defendant got time to do. At the time of the guilty plea, the judge understood there were other checks but did not know that other charges would be filed until after he

had pronounced sentence. Judge Cannon further testified that on February 11, 1977, a motion to dismiss alleging denial of speedy trial in both CRF–76–4640 and CRF–76–4641, was presented to him. He entered a verbal order dismissing each of these cases, but not on the ground of denial of speedy trial. He stated that he dismissed the cases because he thought they were filed because Mr. McKinney did not agree with the sentence he gave the defendant on the four original charges, and he was under the impression that the defendant was being harassed. About 30 minutes later, he decided to vacate his motion to dismiss and retracted the order, because he felt the District Attorney's Office had the authority to file additional charges. He also commented that he felt he had pronounced the proper sentence and would have imposed the same sentence if the two newer checks had been included.

Bobbie Chester testified that she was the District Court Clerk for Judge Cannon and was present on February 11, 1977, when the motion to dismiss because of denial of speedy trial was presented on motion docket. She prepared an order to release pursuant to the judge's verbal order of dismissal. She issued an order of release with the word "case dismissed" on the order. Ms. Chester stated that about 45 minutes later, Judge Cannon told her to retrieve the releases and she went to the County jail and recalled the releases. The defendant was still in jail at the time.

The defendant testified that when he entered a blind plea on December 15, 1976, he did not know the District Attorney would file other charges against him. He stated that after Judge Cannon gave his sentence, McKinney said that he would keep filing charges until the defendant was sent to the penitentiary. Defendant further testified that because of the two subsequent charges he experienced a denial of parole and was held in closer custody.

The trial court denied the motion to dismiss. The case went to trial the following day, and the defendant was convicted and sentenced to three years in the penitentiary.

■ In his first assignment of error, the defendant alleges that prosecutorial misconduct prejudiced the defendant's rights and denied him due process of law. We agree with the defendant that it is the prosecutor's duty to insure that the defendant is not denied due process of law. However, the cases which the defendant cites are clearly distinguishable from the present situation. The cases of *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and, *People v. Ruthford*, 14 Cal.3d 399, 121 Cal.Rptr. 261, 534 P.2d 1341 (1975), deal with the prosecutorial abuse of withholding evidence favorable to the accused, resulting in a denial of due process. At the initial trial of the defendant, there was no evidence withheld that would have a bearing on his first four convictions. 31 C.J.S. Evidence § 2, defines evidence as that which demonstrates, makes clear, or ascertains the truth of the very fact or point in issue. Thus, the knowledge of the prosecutor of other criminal violations cannot be properly termed evidence, as it was not material in regard to the initial charges for which the defendant was on trial.

■ The defendant also cites *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), wherein the due process violations deal with the imposition of a heavier sentence upon reconviction of an offense at retrial, after the original conviction has been set aside; and the substitution by the State of a more serious charge in retaliation against a person convicted of an offense for pursuing his statutory right to a new trial on appeal, respectively. However, in the present situation, we are not dealing with the same offenses but with separate and distinct offenses from the four for which the defendant was originally convicted. The two charges which the prosecutor filed resulted in entirely separate proceedings, not in an appellate proceeding. Thus, these cases and the other cases cited by the defendant dealing with a denial of due process

because of prosecutorial abuse, do not apply to the present fact situation. Furthermore, in assessing the conduct of the prosecuting attorney, this Court has held that a conviction will not be reversed for alleged misconduct of the prosecuting attorney unless conduct might in some degree have influenced the verdict against the defendant. *Hux v. State*, Okl.Cr., 554 P.2d 82 (1976); *Fike v. State*, Okl.Cr., 388 P.2d 347 (1963). In this instance, the question of the defendant's guilt is not at issue.

Also, there is nothing that states that the prosecutor must file all charges against the defendant so that they are tried in a single trial. Title 22 O.S.1971, § 438, states that the court *may* order two or more informations to be tried together if the offenses could have been joined in a single information. See, *Dodson v. State*, Okl.Cr., 562 P.2d 916 (1977). However, the court did not exercise its discretion to do so in the present case. With regard to the prosecuting attorney's withholding of charges pending the outcome of earlier charges, the Court believes that Mr. McKinney did not overstep his power. We have held that the prosecuting attorney has the authority to determine when to commence criminal action on behalf of the State and what charges to file, *Hutchison v. State*, Okl., 318 P.2d 885 (1957); and that the prosecuting attorney not only directs under what conditions a criminal action shall be commenced, but from the time it begins until the time it ends his supervision and control is complete, limited only by legal restrictions, *State v. District Court of 24th Judicial District*, Okl. Cr., 323 P.2d 993 (1958). See, *District of Columbia v. Buckley*, 75 U.S.App.D.C. 301, 128 F.2d 17 (1942).

The defendant further asserts in his first assignment of error that double jeopardy should attach if all charges against the defendant growing out of a single criminal act, occurrence, episode or transaction are not joined at one trial. Whether or not double jeopardy should attach in that instance need not be dealt with since it is the belief of this Court that in the present case the charges against the defendant did not arise out of a single criminal act, occurrence, episode or transaction; rather, each act of obtaining merchandise by the use of a false and bogus check was a separate and distinct offense by the defendant. The prohibition against double jeopardy is intended to protect a person from being repeatedly prosecuted for the same offense until a conviction is obtained. Generally, in determining the viability of a double jeopardy claim, the courts have utilized the same evidence test and the same transaction test or a variation of the two. See, *Branch v. Mills*, Okl.Cr., 500 P.2d 590 (1972), and *Stockton v. State*, Okl.Cr., 509 P.2d 153 (1973). Cases which have dealt with this issue include *Bogue v. State*, Okl. Cr., 556 P.2d 272 (1976); *Lott v. State*, Okl.Cr., 491 P.2d 337 (1971); and, *Glass v. State*, Okl.Cr., 361 P.2d 230 (1961). In *Bogue* the defendant was convicted of unlawful delivery of one controlled drug in a prosecution which followed his conviction on a guilty plea to delivery of another controlled drug. This was notwithstanding that the deliveries of the drugs, which were furnished to two undercover agents, occurred one following the other with no substantial interval of time between the deliveries. The Court stated:

". . . Nor can the sales in the instant case be considered to be the same transaction so proximate in time that but one offense was committed. Defendant committed two distinct offenses by delivering drugs in themselves of different physical states, to two different individuals at two different times. The first sale had been consummated and the second sale and delivery of drugs, however closely following, was the initiation of a separate and distinct sale. . . ." (Citation omitted) 556 P.2d at 274–275.

In *Lott v. State*, supra, the Court held that a prior conviction for the uttering of a forged instrument at another establishment on the same day that the defendant uttered a forged instrument forming the foundation of the subsequent prosecution, was no bar to a conviction in the subsequent case since two separate distinct offenses were

committed. In *Lott*, we relied on *Tucker v. State*, Okl.Cr., 481 P.2d 167, 168 (1971), in which we made the following comment:

". . . We are of the opinion that the fact the crimes were committed in rapid succession does not negate the ultimate fact that separate crimes were committed. To hold otherwise would open the door for persons to commit any number of crimes simultaneously, knowing they could only be punished for one. . . ."

In the present case, each time the defendant obtained merchandise by means and use of a false and bogus check it constituted a distinct offense in violation of 21 O.S.1971, § 1541.2. Moreover, the evidence adequate to one information will not equally sustain another, since each check was written to a different establishment at a different time and place, transferring a different amount of money. Since there were separate false and bogus checks involved, each use of one constituted a separate and distinct offense, rather than comprising a single criminal act or episode, and the defendant may be charged in as many informations as there are separate checks. For the foregoing reasons, the defendant's first assignment of error is without merit.

In his second assignment of error, the defendant contends that the prosecutor's abuse in withholding the charge in the present case denied him a speedy trial. In order to determine whether there has been denial of right to a speedy trial, it must first be established at what time the length of delay begins to run. In *State v. Edens*, Okl.Cr., 565 P.2d 51, 52–53 (1977), this Court stated:

"[T]he requirement of a speedy trial as protected by the United States Constitution and Oklahoma Constitution is not applicable in cases such as this, wherein pre-accusation delay is involved. The right to a speedy trial, protected both by the Sixth Amendment to the United States Constitution and Art. II, § 20, of the Constitution of the State of Oklahoma is limited in application, by express terms, to an 'accused' and one is not an 'accused' until an information or indictment is filed, or where the person is in actual custody or has been arrested in the course of prosecution of the offense in question. . . ." (Citations omitted, footnote omitted)

See, *State v. Duke*, Okl.Cr., 561 P.2d 582 (1977); *Miller v. State*, Okl.Cr., 522 P.2d 642 (1974). In the present case, the check involved was written on December 21, 1975. The initial charges on four other checks were filed on January 16 and January 19, 1976. The defendant was arrested on March 19, 1976, and transported to Oklahoma City on April 20, 1976. He was tried on the initial four charges on December 15, 1976. The charge involving the check in this case was filed on December 16, 1976, and the defendant went to trial in February, 1977. In assessing the time to determine whether the defendant was denied his right to a speedy trial, the defendant counts the time from his arrest in March, 1976, to his trial for the current charge in February, 1977, a period of eleven months. However, by the standards set forth in *State v. Edens*, supra, the defendant was not an "accused" until the charge for this case was filed, which was on December 16, 1976. This made the length of delay a period of approximately three months, and since we feel three months is an unsubstantial delay the balancing test used in weighing whether there has been denial of the right to speedy trial need not be considered. What must be considered is whether the dilatory action on the part of the State in filing charges against the defendant complies with the statute of limitation period in 22 O.S.1971, § 152. Since the State filed the charges well within the three year limitation period, it did comply with this provision. However, one issue which must be mentioned has been noted in *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971):

"[I]t is appropriate to note here that the statute of limitations does not fully define the appellees' rights with respect to the events occurring prior to indictment. Thus, the Government concedes that the Due Process Clause of the Fifth

Amendment would require dismissal of the indictment if it were shown at trial that the preindictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. . . ." 404 U.S. at 324, 92 S.Ct. at 465. (Citations omitted, footnote omitted)

See *Rutledge v. State*, Okl.Cr., 527 P.2d 1373 (1974). Since the question of substantial prejudice to the defendant under due process was addressed earlier, there is no need to discuss it further at this time. Therefore, the defendant's second assignment of error is without merit. However, at this time the Court feels compelled to admonish the prosecuting attorney to review the American Bar Association's standards of fair play.

■ The defendant's final assignment of error is that the court had no jurisdiction to vacate its previously entered order to dismiss. Pursuant to 22 O.S.1971, § 815, the trial court on its own motion proceeded to order the cases of CRF–76–4641 and CRF–76–4640 to be dismissed. However, the fact that the order of release was signed and a minute of the proceedings was made by the Clerk does not make the information null and void. Not only must the order be signed and set forth reasons for dismissal, and be entered on the minutes, *State v. Robinson*, Okl.Cr., 544 P.2d 545 (1975), but in order for the dismissal to be fully perfected it must be filed and appear in the record. Since the judge changed his mind and withdrew the order of dismissal before it was filed in this case, the judge's authority to do so is unquestionable. Therefore, the case was never effectively dismissed. Accordingly, the defendant's final assignment of error is without merit.

■ The defendant also filed a pro se petition in which he raises numerous issues of which some have already been disposed and will not be dealt with again. One issue which the defendant raises deals with obtaining federal injunctive relief against the threat of repeated prosecutions. The defendant states that he was prohibited from

seeking an injunction from the federal court in Oklahoma City by his own counsel, who refused to file such petitions. We do not feel that the present situation merits the special circumstances exception to national policy forbidding federal courts to stay or enjoin pending state court proceedings, the view espoused in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Therefore, the defendant's counsel did not act improperly by not filing the petitions for injunctive relief.

■ The defendant also alleges that he was denied his request for pro se representation. However, there is nothing in the record to indicate that the defendant did not want the assistance of counsel. On the contrary, the record reflects that on January 13, 1977, and on March 11, 1977, there were orders appointing counsel pursuant to the defendant's requests; and according to the Summary of Facts, the defendant's responses indicate that Jim Pearson was still his counsel on March 11, 1977. In order to proceed pro se, the right must be timely asserted, and accompanied by a valid waiver of counsel. *United States v. Dougherty*, 154 U.S.App.D.C. 76, 473 F.2d 1113 (1972). Since there is nothing in the record to show that the defendant asserted his right to proceed pro se, or that he waived counsel or objected to having counsel, this proposition by the defendant is without merit.

■ The defendant further alleges that he was afforded ineffective assistance of counsel. In dealing with a similar proposition in *Johnson v. State*, Okl.Cr., 476 P.2d 395 (1970), we held:

". . . A defendant in a criminal prosecution for whom an attorney is appointed by the court is entitled to a fair trial, not to a perfect trial, and services of appointed counsel meet the requirements of the due process clause of the Fourteenth Amendment where appointed counsel is a member in good standing of a bar, gives the defendant his complete loyalty, serves defendant in good faith to the best of his ability, and his service is of such character as to preserve the essential integrity of the proceedings. . . ." (Citation omitted)

See also, *Worchester v. State*, Okl.Cr., 536 P.2d 995 (1975). After a review of the entire record, we find the defense attorney's actions did not reduce the trial to a sham, farce, or a mockery of justice. In fact, the trial judge commended the defense attorney in his representation of the defendant. We therefore find this contention to be without merit.

 Finally, the defendant alleges that the court was without legal jurisdiction and standing to hold and prosecute him from the period of December 15, 1976, through March 19, 1977, because the writ ad prosequendum expired with the rendition of judgment and sentence on the initial four charges. However, one sovereign having the prior and exclusive jurisdiction and custody of a person for violation of its penal laws may voluntarily surrender him to another for the purpose of trial on a criminal charge, and in such circumstances the question of jurisdiction and custody is essentially one of comity between the two sovereigns, not a personal right of the individual. *Stamphill v. United States*, 135 F.2d 177 (10th Cir. 1943). See, *Casias v. United States*, 421 F.2d 1233 (10th Cir. 1970); *Joslin v. Moseley*, 420 F.2d 1204 (10th Cir. 1969). It follows that the sovereign alone may raise objections to the interference with its rights to the possession of a prisoner under the rule of comity. *Mitchell v. Boen*, 194 F.2d 405 (10th Cir. 1952). Therefore, this proposition by the defendant is without merit.

The record is free of any error which would justify reversal and, accordingly, the judgment and sentence is *AFFIRMED.*

BUSSEY, P. J., and BRETT, J., concur.