## GEORGE ROBERTS v. THE TERRITORY OF OKLAHOMA.

(Filed June 15, 1899.)

BURGLARY—*Evidence—Consent.* Under an indictment for burglary, if it appeared from the evidence that the entry was instigated by the occupant of the building which was burglarized, or that it was done with the knowledge and assent of the occupant, and that one of the persons engaged in the breaking and entry of the building was a detective and decoy acting with the authority of the occupant, the defendant would not be criminally liable.

(Syllabus by the Court.)

*Error from the District Court of Custer County; before John C. Tarsney, District Judge.*

*Grigsby & Pearl* and *W. A. Maurer*, for the plaintiff in error.

*Harper S. Cunningham*, Attorney General, *J. T. Shive*, County Attorney, and *Roy Hoffman*, for defendant in error.

George Roberts was convicted of burglary, and brings error. Reversed. This was a trial upon an indictment for burglary in the second degree. It appeared from the evidence that the defendant, Roberts, in company with his brother, Bert Roberts, and one Dick Shriver, had raised a window and entered the saloon of one Ben Bullard. The plaintiff in error was found guilty, and sentenced by the court to imprisonment in the penitentiary.

Opinion of the court by

McATEE, J.: One of the grounds stated in the motion for a new trial was that the court had committed error upon the trial of the cause, and that the verdict of the jury was contrary to the law and the evidence. The action of the court here complained of was upon a demurrer to the testimony introduced by the prosecution upon the ground that it did not prove the guilt of the defendant, and because the witness, Ben Bullard, who owns the building, and the goods in the building, charged in the indictment, had made and entered into an agreement with one Dick Shriver to bring the defendant there and go into the saloon, and that Bullard could not make a break into his own building, and that, if he gave Shriver authority to do so, there was no breaking in."

It appeared from the testimony on the part of the proscecution that Bullard was the occupant of the saloon building in which the burglary was charged to have been committed; that he was informed by one Dick Shriver that the defendant, Roberts, and his brother, Bert Roberts, were going to break in there, and that Shriver told Bullard about it, and that Bullard told Shriver to find out if he could, what night it was, and, when he had found out, to let him (Bullard) know; that afterwards Shriver

informed Bullard that "tomorrow night the boys were coming to break in, and I am coming with them;" and that finally Bullard told him that it would be "all right." It appeared from the cross-examination of Bullard that Shriver had at times kept bar for him in the saloon, and under cross-examination he testified as follows:

"Question. And you told Shriver it would be all right for him to bring them (the Roberts boys,) and go into the house? Answer. Not at that time. Not at the first time.

"Q. Did you tell him that at any time before the breaking? A. He said they would break in whether he came or not.

"Q. And then you told him that it would be all right if he went along with them and broke in? A. No, sir; I only told him that it would be all right."

The defendant testified: That at the time of the alleged breaking he was 17 years of age. That he had known Dick Shriver for about a year and a half, and that he (Shriver) had kept bar for Bullard "off and on." That on the night of the alleged breaking "he left there to go to the dance, and intended to go around by our father's place, so that my brother could change his clothes; and we got on our horses, and Dick says, 'We haven't got enough whisky; we will go and get some;' and he says, 'The window is left open for my benefit;' and we says to him, 'If there is no danger, we'll go,' and he says, 'Well, just walk up there;' and we started to go to the back entrance, and the window was raised two or three inches. There was no prizing or anything of that kind at all."

"Question. How did the window get up higher? Answer. The boys, I suppose, raised the window higher."

And that Shriver had told the defendant and his brother that the window was left open for his benefit, and, of

course, "we thought it was all right," and that, at the time of the breaking, Shriver was living with Ben Bullard.

This testimony was uncontradicted. The name of Dick Shriver was endorsed upon the indictment as one of the witnesses who had been presented before the grand jury. It appeared in the evidence that Shriver was present, outside of the court house, after the beginning of the court on the day of the trial. He was a most important witness for the Territory. The testimony of the defendant to the effect that Shriver stated that he was living with Bullard at the time of the alleged burglary, and was authorized to enter the saloon, and that the window was partly raised for that purpose, remained uncontradicted. It is manifest from the testimony that Shriver was himself authorized by Bullard to return, and to enter the saloon in the manner which was shown by the testimony,—that is, by raising the window of the saloon,—and that the purpose of this permission was to apprehend the defendant and his brother in the act of entering the saloon with Shriver, if they should do so. The fact that Shriver was at the time living with Bullard, and had at times tended bar, was, we think, sufficient to justify the defendant in relying upon his (Shriver's) statement that the window had been left open for him, and that he was authorized to enter the saloon at that time and by that means. Shriver was present about the court house. It was within the power of the Territory to place him upon the witness stand and to contradict this testimony of Roberts. This it failed to do.

It was said in the case of *People v. McCord* (decided in

the supreme court of Michigan) 42 N. W. 1106, that: "Possibly (but we do not care to decide this) leaving temptation in the way, without further inducement, will not destroy the guilt, in law, of the person tempted, although it is a diabolical business, which, if not punishable, probably ought to be. But it would be a disgrace to the law, if a person who has taken active measures to persuade another to enter his premises and take his property, can treat the taking as a crime, or qualify any of the acts done by invitation as criminal. What is authorized to be done is no wrong, in law, to the instigator." And in this case it was said that the instigator or detective was active in the matter, and that the circumstances were such as would exonerate him and his victim from criminal responsibility, and that, "if the transaction which is the basis of the prosecution was actually designed as it was actually expected by the persons in the store, they deserve something more than censure for such a scheme." The court in that case said also that: "It is not edifying, when persons who would be horrified at being classed among criminals forget their legal duties, and imagine that any end can justify bad means. The conviction must be set aside, and, upon the record as it stood when the case went to the jury, we cannot see how they could have convicted the prisoner, under the correct view of the law."

And it was said in 2 East, P. C. 666, that no felony was proven, since the whole thing was done with the knowledge and assent of Mr. Bolton, and that the acts of Phillip, the servant, were his acts. We think that these remarks are applicable to the facts in this case. The evidence showed that Shriver had been used and relied

upon as the detective; that he had acted as a decoy, and had induced the defendant to enter the saloon, and we think that the defendant should not have been convicted of burglary therefor, and that the inducement and consent of Shriver were the inducement and consent of Bullard; and we think that the trial court should have sustained the motion for a new trial. (*People v. McCord*, [Mich.] 42 N. W. 1106; *Speiden v. State*, 30 Am. Rep. 126)

The judgment of the lower court is therefore reversed, and the cause remanded.

All of the Justices concurring.