## UVON YEAGER v. STATE.

No. A-10597. May 29, 1946.

(169 P. 2d 579.)

Kenneth B. Kienzle, of Shawnee, for plaintiff in error.

Randell S. Cobb, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, P. J. The defendant was charged in the district court of Pottawatomie county with the crime of burglary in the second degree after former conviction of a felony; was tried, convicted and sentenced to serve ten years in the State Penitentiary, and has appealed.

On behalf of the defendant it is contended that the evidence is insufficient to show that a burglary was committed by defendant, and, secondly, the trial court erred in refusing to submit to the jury the issue as to whether the defendant had committed the included offense of entering a building under circumstances not amounting to burglary as provided in 21 O. S. 1941 § 1438.

In connection with the first proposition, that the proof of the state did not show that a burglary had been committed, the facts are undisputed. The Pine Theater in Tecumseh was entered the night of April 16, 1943, and three pairs of pliers and a screwdriver were taken

from the projection room. The owner of the theater testified as follows concerning the alleged burglary:

"Q. Was your theater broken into on or about April 16, 1943? A. Well, I don't know what was involved, there was no door opened, but there was an opening one could get through. Q. There was an opening? A. Yes, sir. Q. Where? A. Outside over the front door in the ceiling, 7½ or 8 feet high. Q. Not the regular entrance for customers? A. No, sir. Q. Or for employees to enter the theater? A. No, sir. Q. What was it used for? A. We taken a section of the cello-tex out of the ceiling for the purpose of putting a ventilation in for the booth for air to circulate through. Q. Was there a ladder or steps going up to the ceiling? A. No, sir. Only on the wall there was an advertising board which could be climbed but was not for that purpose. Q. Seven or eight foot high? A. Yes, sir. Q. How big was the opening? A. Somewhere in the neighborhood of 18 or 20 inches—somewhere around that, I wouldn't know but approximately. Q. Just one cello-tex board off? A. Yes, sir. Q. Had he torn the door or screen off? A. No, sir. Q. You know whether or not Uvon Yeager was in Tecumseh at that time? A. No, sir. Q. You don't know? A. Not positive because I didn't see him. Q. You didn't see him Friday night? A. No, sir. Q. How long before that time had you seen him in Tecumseh? A. Well, I saw him daily and I wouldn't say positive I saw him the Friday it happened or not, but by him living there I would see him in town. Q. Do you know whether or not he had been inside and about the theater and knew where the equipment was and the arrangement in the theater other than being a customer? A. He had at one time helped me with the work. Q. He had helped you? A. Yes, sir. Q. You mean he had been about the machine room? A. Yes, sir. Q. And had occasion to see the tools and equipment? A. Yes, sir. Q. Did you give him or anyone permission to take any of these? A. No, sir. Q. Did you give him or anyone permission to climb up and to in there? A. No, sir."

Cross-examination:

"Q. Mr. Bates, this hole that was in the ceiling there, or wherever it was, the opening was large enough for a boy or man to crawl through? A. Yes, sir. Q. Where did it lead—into the projection room? A. It's the ceiling right over the main lobby partition wall making the opening. Been a store building remodeled into a theater. This opening entered into the booth for the purpose of air ventilation. Q. The articles taken, they were just laying out in the open there on a bench? A. Yes, sir, just in the open. Q. Then, in other words, to get these tools, you wouldn't have to push anything open to get in? A. No, sir. Q. Wouldn't have to open any doors or raise any windows or push anything, is that correct? A. Yes, sir."

The foregoing is all of the testimony concerning the alleged breaking and entry into the building. The defendant was arrested several months after the articles were stolen and admitted to the officers that he had taken the pliers and screw driver, which had a total value of approximately $1.50 under the evidence. The state also showed that the defendant in 1941 had pleaded guilty to assault with intent to commit rape and had served one year imprisonment in the State Penitentiary.

Burglary in the second degree is defined as follows:

"Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection in which any property is kept, with intent to steal therein or to commit any felony, is guilty of burglary in the second degree." 21 O.S. 1941 § 1435.

In the early case of Lumpkin v. State, 25 Okla. Cr. 108, 219 P. 157, 158, this court stated:

"It is a familiar principle that a breaking, necessary to constitute the crime of burglary, may be by any act of

physical force, however slight, by which obstruction to entering is forcibly removed, and the opening of a closed door in order to enter a building may constitute a breaking; however, the evidence in this case wholly fails to show any such unlawful breaking or entering."

In the case of Raymer v. State, 41 Okla. Cr. 263, 272 P. 488, it was held:

"While the breaking and entry may be shown by circumstantial evidence, there must be some proof, either direct or circumstantial, that the building was in fact broken into within the meaning of the statute defining burglary."

In Yeargin v. State, 54 Okla. Cr. 34, 14 P. 2d 431, the second syllabus reads:

"The breaking and entering necessary to constitute burglary may be by any act of physical force, however slight, by which the obstruction to entering is forcibly removed, and the opening of a closed door in order to enter a building may constitute a breaking."

In 12 C.J.S., Burglary, § 3, pages 669, 670, the rule as to what constitutes a breaking under the statute defining burglary is well stated as follows:

"To constitute burglary at common law, and also under the statutes, unless a contrary intention appears, there must be some breaking of the structure, either actual or constructive. An entry through an open door, window, or other aperture, although there may be an intent to commit a felony, is not enough. * * * Actual breaking involves the application of some force, however slight, whereby an entrance is effected, and means a making of an opening or mode of entrance into the building by force, but it does not necessarily contemplate the destruction of any of its parts. There must be some degree of force, and a 'breaking, removing, or putting aside of something material which constitutes a part of the

dwelling house, and is relied on as a security against intrusion.' 'In order to constitute it (a breaking) the action of the defendant must have been such as would, without additional effort, have made an entry possible.' An entrance through an opening in a wall without removing or overcoming any obstruction or obstacle of any kind is not a breaking."

In construing the evidence of the state under the rules laid down by the above decisions, it is apparent that there was no breaking into the building under the contemplation of our law.

In the case of Ex parte Peoples, 69 Okla. Cr. 83, 100 P. 2d 295, it was held that the offense defined under 21 O. S. 1941 § 1438 is an included offense in a second-degree burglary charge. Said statute provides:

"Every person who, under circumstances not amounting to any burglary, enters any building or part of any building, booth, tent, warehouse, railroad car, vessel, or other structure or erection with intent to commit any felony, larceny, or malicious mischief, is guilty of a misdemeanor."

The defendant prepared an instruction based upon this statute and requested that it be given, which request was refused. This was error, as the defendant was entitled to the benefit of such instruction.

The record discloses that the defendant spent eight months in the county jail awaiting trial on this charge. He had been employed by the owner of the theater doing odd jobs around the theater for some time prior to the alleged theft. The owner of the theater testified that he signed a complaint in blank before he knew who had taken the articles, and that he did not desire to prosecute the defendant. Under the record, the guilt of the defendant of the misdemeanor defined under 21 O.S. 1941

§ 1438, supra, is apparent. Because of the errors committed by the trial court above discussed, this court could remand the case for a new trial, but it would only result in a further delay and the imposition of additional imprisonment while awaiting trial.

On an appeal, this court may consider the entire record and modify the sentence imposed against the defendant to such imprisonment as the law and justice require. Under the circumstances, taking into consideration the small value of the articles stolen, and the fact that the defendant has already served many months' imprisonment because of failure to make bond, the judgment and sentence against the defendant for the crime of burglary in the second degree after former conviction of a felony is modified so as to impose a judgment against the defendant for the misdemeanor of entering a building under circumstances not amounting to burglary, and the punishment is modified from ten years in the penitentiary to imprisonment in the county jail for a period of one day, and the judgment and sentence of the district court of Pottawatomie county as thus modified is affirmed.

BAREFOOT, J., concurs. DOYLE, J., not participating.