Paul SHIELDS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A-16545.

Court of Criminal Appeals of Oklahoma.

Nov. 3, 1971.

Rehearing Denied Dec. 10, 1971.

Stipe, Gossett, Stipe & Harper, McAles-
ter, for plaintiff in error.

Larry Derryberry, Atty. Gen., Sondra
Leah Fogley, Asst. Atty. Gen., for defend-
ant in error.

BUSSEY, Presiding Judge:

Paul Shields, hereinafter referred to as
defendant, was charged, tried, and con-
victed in the District Court of Texas Coun-
ty, Oklahoma for the offense of Burglary
in the First Degree. His punishment was
fixed at seven (7) years imprisonment, and
from said judgment and sentence, a timely
appeal has been perfected to this Court.

At the trial, Mrs. Charleen Shields tes-
tified that she was the former wife of the
defendant, and that they had been divorced
for approximately two years. On August
25, 1970, she had several telephone calls
from the defendant, wherein he called and
accused her of "going out with every man
in town." In the early morning hours of
August 26, 1970, she received another tele-
phone call from the defendant, and that he
seemed "mad" and was cursing. Approxi-
mately fifteen minutes later, she heard
glass breaking in the front door and ob-
served the defendant stick his hand through
the glass, unlock the door, and enter the
house. She ran to the telephone and called
the police, wherein the defendant stated,
"Oh, no, you don't," and ran toward her.
She ran to the bedroom, with the defendant
still chasing her. The defendant struck
her with his fist knocking her to the floor
and proceeded to kick her with his feet.
She testified that she would black out and
come to, and his feet were still coming at
her. She suffered broken ribs and spent
two and a half days in the hospital, as a
result of the injuries. She testified that
the defendant was not invited, nor did
he have permission to come to her home.

She testified that the defendant called her after the attack and stated, "I guess I didn't do a good enough job this time," and "next time he would hire a professional to kill me next time and throw acid in my face." (Tr. 16)

Max Shields, age fifteen, testified that he was the son of the defendant and was living with his mother, Charleen Shields. He testified that on the morning in question, he observed his father kick the glass out of the front door and reach in and unlock the door. His mother ran to the telephone, wherein the defendant started toward her stating, "Oh, no, you don't." His mother ran into the bedroom, with the defendant following her. He went out the back door and called the police. Upon returning to the house, he found his mother lying in the bedroom bleeding. He testified that there were two telephone calls after his father left, and that he heard the second conversation, wherein his father stated to his mother that the next time he would hire a professional killer and would throw acid in her face.

Rex Shields, age twelve, testified that on the morning in question, he heard the door glass break and observed his father unlock the door and walk toward his mother, who was trying to dial the telephone. His mother ran toward the bedroom, with his father following. He observed his father hitting his mother, saw her fall, and then saw him kicking her. He ran out the back door and went to a filling station where his brother was calling the police.

The defendant testified that he had been divorced from Charleen Shields for approximately two years, and during that period of time frequently visited in the home, at times babysitting for his children. He became concerned over his wife's working nights and leaving the children alone, and decided that he must talk to her about it. He testified that on August 25, 1970, he called his wife and told her that he wanted to talk to her. At approximately 2:00 o'clock on the morning of August 26, he went to her house, opened the screen, and gave two or three raps. Nobody answered the door, and he was determined that he was going to talk to her, wherein he burst the window, unlocked the door, and started toward her bedroom. He did not see her near the telephone, and upon seeing him, she panicked, ran toward the bedroom and tripped on something, and fell onto the bed, and was "about half-way knocked out." He testified that he did not strike her, nor did he kick her. He testified that he later called the house and talked to a police officer named, Larry. He denied telling the officer that "I believe I hurt her pretty bad this time." He denied making a telephone call subsequent to the incident, wherein he stated that he would hire a professional killer. He further denied other threats to his wife, including pointing a loaded gun at her.

The State recalled Charleen Shields in rebuttal, and she testified to the threats her husband had made toward her in the past, including pointing a loaded gun at her.

Rex Shields testified concerning seeing the defendant beat and kick his mother.

Officer Jordan testified that he was at the Shields' residence and talked to the defendant on the telephone, wherein the defendant stated, "I think I hurt her pretty bad this time."

The defendant testified in surrebuttal that he did not strike his former wife, but that he knew that she was scared, and whatever happened to her was his fault for being there.

■ The first proposition asserts "the State did not prove each and every allegation of burglary in the first degree and the trial court erred in overruling the defendant's demurrer to the evidence." The defendant argues under this proposition that, although the defendant admitted to breaking into the house, the State failed to prove that he entered with the intent to commit a crime within. We have examined the defendant's citations of authority, and after considering such, are of the opinion that the same are distinguishable from the case

at bar. In Ryans v. State, Okl.Cr., 420 P.2d 556, we stated:

"Intent as an essential element of an offense is a question for the jury to be determined from what the accused does and says, and all the facts and circumstances of each case." See also Cherry v. State, Okl.Cr., 276 P.2d 280.

We are of the opinion that the evidence was sufficient, if believed to support the verdict of the jury, that the defendant broke into and entered with the intent to commit a crime. We have consistently held that where there is competent evidence in the Record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine facts. Jones v. State, 468 P.2d 805 (1970).

■ The final proposition contends that the trial court failed to instruct the jury adequately upon the issues presented at the trial. The defendant specifically argues under this proposition that the trial court should have instructed the jury regarding consent as a bar to breaking, and further, that the trial court should have more fully explained the question of intent when requested to do so by the jury. The Record does not reflect that the defendant requested any instructions and saved no exception to the instructions offered. In the recent case of Schapansky v. State, Okl. Cr., 478 P.2d 912, we stated:

"Where counsel is not satisfied with instructions that are given, or desires court to give any particular instruction, or to more definitely or sufficiently state any propositions embraced in instructions, it is the duty of counsel to prepare and present to the court such desired instructions and request that it be given and in absence of such request, Court of Criminal Appeals will not reverse case if in-

structions generally cover subject matter of inquiry."

We are of the opinion that the instructions in the instant case are sufficient to cover the subject matter of inquiry, and therefore find this proposition to be without merit.

In conclusion, we observe that the Record is free of any error which would justify modification or require reversal. The punishment imposed is the minimum allowed by law, and under said circumstances, the judgment and sentence should be, and the same is, affirmed.

BRETT, J., concurs.