Robert Earl **HALL**, Appellant,

v.

The **STATE** of Oklahoma,
Appellee.

No. F–75–673.

Court of Criminal Appeals of Oklahoma.

April 6, 1976.

John DeWitt, Shipp & DeWitt, Idabel, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Kenneth Lisle, Legal Intern, for appellee.

OPINION

BLISS, Judge:

Appellant, Robert Earl Hall, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, McCurtain County, Case No. CRF–74–199, for the offense of Burglary in the Second Degree, After Former Conviction of a Felony. His punishment was fixed at a term of twenty-five (25) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness at trial was Rosie Jones who testified that on the 29th day of December, 1974, she lived at 1706 Hillcrest in Idabel, Oklahoma. On that day she visited her uncle's house which was located across the street from her own home. She said that she was accompanied to her uncle's house by her daughter and grandchild. She testified that later that evening between 1:00 and 2:00 a. m. her daughter and grandchild left to go to her house approximately 15 or 20 minutes before she did. Upon arrival at her house she heard a "funny kind of noise" and she called out to her daughter, who did not respond. She said that she called her daughter a second time and at this time her daughter was pushed out of her room in her nightclothes and she appeared to be nervous, stating that one Robert Hall was bothering her. The witness testified that she kicked open the door and watched the defendant exit the west bedroom window. Thereafter, the witness retrieved her gun and went out the front door and shot at the defendant twice, but missed. The authorities were then called and upon investigation of the house she observed the bathroom window raised and the west bedroom window raised with a screen pushed out. She stated that

earlier in the evening both windows had been closed. She found a jean jacket on the bathtub. She testified that she had not given the defendant permission to enter her house and that her house was fully furnished and contained personal property. She also testified that the defendant was her second cousin.

Flora Young testified she was the 17-year-old daughter of Rosie Jones, the previous witness, and she testified that she and her mother had visited her uncle on the 29th day of December, 1974, stating that she left to go home before her mother. She said that approximately five minutes after having retired to bed she observed the defendant come through the window. She said that shortly thereafter she heard her mother come into the house and call to her, but she could not say anything because defendant had his hand over her mouth. She testified that defendant allowed her to get up and she left the room. She told her mother that the defendant was in her bedroom whereafter her mother kicked open the door. The defendant was halfway out of the window. She further testified she did not give defendant permission to come into the house.

On cross-examination she testified that after the defendant left the house a blue jean jacket was found, and she knew it to belong to the defendant, as she had seen him wearing it before.

Charles Ward testified that he was a policeman and was so employed on the 29th day of December, 1974, at which time he investigated an alleged burglary at the residence of Rosie Jones. Upon being shown State's Exhibit No. 1, he identified it as the jean jacket which was given to him by Rosie Jones on December 29, and he further stated that investigation of the house revealed a window raised approximately six inches. He speculated that the defendant entered the house through the bathroom window.

Jack Hall testified that he was a patrolman with the Idabel Police Department and was so employed on the 29th of December, 1974, when on that evening he had occasion to see the defendant twice. He stated the first time he saw defendant was approximately 12:30 a. m. after he had responded to a woman's call that someone was peeking in through her window on Hillcrest. On response to the woman's call he observed the defendant sitting in a vehicle across the street and proceeded to talk with him. He testified the defendant, on that evening, wore a levi jacket. He further stated that he saw the defendant again approximately 30 minutes later, walking across one of the lawns on Hillcrest, in Idabel, Oklahoma. At that time the defendant was still wearing a blue jean-type jacket and that he told the defendant it was time to go home. Upon being shown State's Exhibit No. 1, he identified it as a jacket similar to the kind which defendant wore on that evening. The State then rested.

Percy Hall testified he was the defendant's father and that his son arrived home on the evening of December 29, 1974, at approximately 12:30 a. m. and that the defendant did not leave after that time. On cross-examination he testified that defendant never had such a jacket as State's Exhibit No. 1.

The defendant took the stand and testified in his own behalf and stated that on December 29, 1974, he was in the company of his girlfriend, Lola Kenibrew, until approximately midnight. He also stated that he talked with Officer Hall twice that same night. He further stated that he did not own a jean jacket and on the evening in question he had met his friend, Paul Viney, who took him home. He stated that he had been previously convicted of grand larceny and burglary.

In rebuttal, Paul Viney testified that he saw defendant on December 29, 1974, and that he took defendant to the Hillcrest Apartments and then returned home. He stated that defendant came to his house between 12:00 and 1:00 a. m. and asked him to drive him home, which he did. On

cross-examination he stated that he did not know approximately what time the defendant came to his house but that he knew it was approximately 3:00 a. m. when Officer Hall came to his house.

Defendant's first assignment of error asserts that the evidence of the State is insufficient to support the verdict for the reason that there was no evidence of an intent to steal as alleged in the information. As noted by this Court in *Wilson v. State*, 50 Okl.Cr. 310, 297 P. 826 (1931):

"Direct evidence of the intent to commit crime is not necessary. It may be shown by indirect evidence, as well as direct, and intent is to be gathered from all of the facts and circumstances in the case. If the evidence of such intent be made to appear to the satisfaction of the jury beyond a reasonable doubt, that is all the law requires.

"16 Corpus Juris, 773, states the rule:
" 'The elements of the offense may be established by circumstantial evidence, where direct evidence is not available.'
"A person is presumed to intend the natural, probable, and usual consequences of his acts. *People v. Moxley*, 17 Cal.App. 466, 120 P. 43; *State v. Asal*, 79 Mont. 385, 256 P. 1071.
"Where it is shown that the accused broke into and entered the house, it may ordinarily be presumed that he did so with intent to commit theft. *Vickery v. State*, 62 Tex.Cr.R. 311, 137 S.W. 687, Ann.Cas.1913C, 514." [1]

■ In the instant case the defendant took the stand and essentially testified that he was at home when the alleged burglary occurred and that he did not have occasion to see Rosie Jones and Flora Young on that evening. The State's evidence consisted of two eyewitnesses who identified the defendant as being in the home of Ros-

ie Jones on the evening in question, without permission, and further that upon being discovered he left the residence without explanation. Such facts were sufficient to submit to the jury, under appropriate instruction, question of intent of defendant. · We are of the opinion that the circumstances were such that the jury properly found the defendant forcibly entered Rosie Jones' home in the nighttime with the intent to steal. For this reason the verdict of the jury will not be disturbed, for we have often held that where there is competent evidence in the record from which the jury could reasonably conclude the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in· the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. See, *Jones v. State*, Okl.Cr., 468 P.2d 805 (1970). Therefore, we find this assignment of error to be without merit.

■ The defendant lastly contends that the sentence of twenty-five (25) years' imprisonment, under the circumstances and evidence in this case, is excessive. We need only note that the defendant was found guilty of burglary in the second degree, after former conviction of a felony, for which the minimum sentence is ten (10) years' imprisonment. See, 21 O.S. 1971, § 1435 and 21 O.S.1971, § 51. The defendant's sentence is well within the range provided by law, and does not shock the conscience of this Court. See, *Turner v. State*, Okl.Cr., 479 P.2d 631 (1971).

For all the above and foregoing reasons the judgment and sentence appealed from is, therefore, *AFFIRMED.*

BRETT, P. J., and BUSSEY, J., concur.

---

1. Also see, *Lee v. State*, Tenn.Cr.App., 489 S.W.2d 61 (1972); *Ex parte Seyfried*, 74 Idaho 467, 264 P.2d 685 (1953); and, *State v. Woodruff*, 208 Iowa 236, 225 N.W. 254 (1929).