2001 OK CR 14

**Jerry Lynn ROBERTS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

No. F–2000–218.

Court of Criminal Appeals of Oklahoma.

May 30, 2001.

Steve Kessinger, Deaton, Davison & Kessinger, Ada, Attorney for Defendant at trial.

Nancy Shew, Nancy Connally, Assistant District Attorneys, Ada, Attorneys for the State at trial.

Stephen B. Hackett, Norman, Attorney for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Kellye Bates, Assistant Attorney General, Oklahoma City, Attorneys for Appellee on appeal.

## OPINION

CHAPEL, J.

¶1 Jerry Lynn Roberts was tried by a jury and convicted of Burglary in the First Degree, in violation of 21 O.S.1991, § 1431, After Two or More Prior Felony Convictions (Count I); Possession of a Weapon While Committing a Felony, in violation of 21 O.S.Supp.1995, § 1287 (Count III); and Assault and Battery with a Dangerous Weapon, in violation of 21 O.S.Supp.1998, § 645 (Count IV), in the District Court of Pontotoc County, Case No. CRF–99–180. Roberts was acquitted of Kidnapping, 21 O.S.Supp. 1998, § 741 (Count II). In accordance with the jury's recommendation, the Honorable Thomas Landrith sentenced Roberts to twenty (20) years imprisonment on each of the three counts, to be served concurrently. Roberts appeals his convictions for first-degree burglary and possession of a weapon while committing a felony. He does not appeal his conviction for assault and battery with a dangerous weapon.

¶2 On June 24, 1999, at approximately 8:00 a.m., Roberts went to the home of his former wife and her current husband, Barbara and Warren Rutherford. Only Warren was home. Warren testified that he was sitting in the living room watching television, when Roberts "just walked in—just walked in the front door." Rutherford also testified that his son had just left and that the two front doors, a storm door and an interior solid door, were both closed but not locked.[1] Roberts was carrying a shotgun and was ranting about being sick of the law "dogging him" and wanting to see his daughter Tiffany.[2]

¶3 Rutherford told Roberts that Tiffany was at the home of her maternal grandmother, Besse Bolen. Roberts asked Rutherford to take him there. Rutherford agreed and drove Roberts to the Bolen home in his pickup truck.[3] Rutherford testified that Roberts never threatened him or any of the other family members, but that he kept saying that he wanted the law to leave him alone and that Besse's house "would be a good place for it all to take place."

¶4 The first-degree burglary charge was based upon Roberts' entry into the Rutherford home, while the kidnapping charge, upon which the jury acquitted, was based upon the trip to the Bolen home in Rutherford's pickup. The possession of a weapon while committing a felony charge was likewise based upon Roberts' possession of a gun while committing the crimes of burglary and kidnapping. Most of the testimony put on at trial, however, related to the sequence of events at the Bolen home after the arrival of Roberts and Rutherford. Because Roberts does not appeal the one conviction based upon these later events—the assault and battery with a dangerous weapon conviction—

---

1. Rutherford testified that although his son usually locks the front door when he leaves, he did not think his son locked it that day. No other evidence suggested that either door was locked.

2. Tiffany, who was 12 years old at the time, is Roberts' biological daughter, born after he divorced Barbara and later adopted by Warren Rutherford.

3. Rutherford testified that Roberts "asked" to be taken to see Tiffany, while still holding the shotgun, but that there "wasn't no threat or nothing." Rutherford waffled on whether he would have taken Roberts to see Tiffany if he hadn't been holding a gun. Rutherford's testimony was also unclear regarding the position of the shotgun during the trip.

we need not belabor the details of these events.[4]

¶5  Roberts testified at trial and admitted most of the key facts at issue. His testimony regarding entry into the Rutherford home, however, differed from that of Warren Rutherford in one crucial respect. Roberts testified that he knocked on the Rutherford's front door and that Warren Rutherford then acknowledged him and "waved me in." Roberts testified that the interior solid door was open at the time and that he could see Warren inside.

¶6  In his first proposition of error, Roberts asserts that the trial court erred by modifying the uniform jury instruction for first-degree burglary, such that it omitted an element of the offense and allowed the jury to convict him improperly. The uniform instruction in effect at the time stated as follows:

### BURGLARY IN THE FIRST DEGREE—ELEMENTS

No person may be convicted of burglary in the first degree unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

*First,* breaking;

*Second,* entering;

*Third,* a dwelling;

*Fourth,* of another;

*Fifth,* in which a human is present;

*Sixth,* with intent to commit some crime therein;

[*Seventh,* by forcibly bursting/breaking (the wall)/(an outer door)/(a window)/(the shutter of a window of the dwelling)/(the locks/bolts of an outer door)/(the fastening of a window/shutter of the dwelling).]

[*Seventh,* (armed with a dangerous weapon)/(assisted/ aided by (a confederate)/confederates then actually present).]

[*Seventh,* by (unlocking an outer door by means of [false keys]/[picking the lock thereof])/(lifting a latch)/ (opening a window).][5]

The trial court in Roberts' case used this uniform instruction, but modified the seventh element to state as follows: "*Seventh,* by going through an unlocked door."[6]

¶7  The modified burglary instruction was actually given twice, once within the initial first-degree burglary instruction and then again within the possession of a weapon while committing a felony instruction, since the burglary was one of the two underlying felonies alleged.[7] The record does not reflect that either the State or the defense proffered any jury instructions. Nor does the record contain any discussion of or objection to any of the instructions given by the court. Hence the instructions will be reviewed only for plain error.[8]

¶8  Roberts maintains that the modified instruction failed to properly state the elements of first-degree burglary and allowed him to be convicted improperly. The trial record reflects that Roberts' defense to the burglary charge was to claim that he did not "break" into the Rutherford home, because (1) the door he entered was unlocked, and (2) Warren Rutherford consented to his entry by acknowledging him and "waving [him] in." Hence his counsel argued that the State had not proved the "breaking" element of burglary.

---

4.  Let it suffice to say that Roberts entered the Bolen home with his shotgun, continued ranting about being tired of being dogged by the law, called a local news station to ask them to cover what was going to happen, and threatened to shoot whoever came to arrest him. Tiffany, Warren Rutherford, and Besse Bolen eventually managed to escape the home and call police. In the end Roberts was arrested only after being tricked into coming out of the house and then struggling with two officers while holding his shotgun. The assault and battery conviction was based upon this struggle.

5.  OUJI–CR(2d) 5–12 [Supp.1997]. The current uniform instruction will be discussed *infra.*

6.  The Notes on Use for the uniform instruction stated simply: "The trial court should select the appropriate Seventh Element in this instruction according to the evidence presented." *See* Notes on Use, OUJI–CR(2d) 5–12 [Supp 1997].

7.  *See* Instructions 14, 19.

8.  *See Torres v. State,* 1998 OK CR 40, 962 P.2d 3, 17, *cert. denied,* 525 U.S. 1082, 119 S.Ct. 826, 142 L.Ed.2d 683 (1999).

¶ 9 The fact that the front doors to the Rutherford home were unlocked is not decisive regarding whether Roberts could have committed the offense of first-degree burglary. It has long been held by this Court that a "breaking" in the burglary context includes any act of physical force, however slight, by which obstructions to entering are removed.[9] Although most of the cases reciting this principle have been second-degree burglary cases,[10] this definition has also been extended to first-degree burglary under Section 1431.[11]

¶ 10 Furthermore, this Court has repeatedly found that opening a closed but unlocked door or window may be adequate to constitute a breaking in this context.[12] In addition, using force to enter through an open or partially open door can constitute a breaking.[13] On the other hand, this Court

has likewise recognized that simply going through an open door or open window does not constitute a burglary "breaking."[14] Roberts acknowledged in his own testimony that he opened a door to enter the Rutherford home, hence there is no question that Roberts applied sufficient force to have broken into the home. The real question is whether this would-be "breaking" was authorized by Warren Rutherford.

¶ 11 Although neither the statutes nor the uniform jury instruction for first-and second-degree burglary mention permission or consent, consent and authorization to enter have long been recognized as a defense to burglary in Oklahoma.[15] As early as 1899 our Territorial Court recognized that consent to enter given by an owner/occupant negated the crime of burglary.[16] In *Shouquette v.*

---

9. *See Lumpkin v. State*, 25 Okla.Crim. 108, 219 P. 157, 158 (1923) ("It is a familiar principle that a breaking necessary to constitute the crime of burglary, may be by any act of physical force, however slight, by which obstruction to entering is forcibly removed ...."); *see also Yeargin v. State*, 54 Okla.Crim. 34, 14 P.2d 431 (1932) (syllabus); *Fish v. State*, 1973 OK CR 5, 505 P.2d 490, 495; *Luker v. State*, 1976 OK CR 135, 552 P.2d 715, 718; *Brecheen v. State*, 1987 OK CR 17, 732 P.2d 889, 893–94, *cert. denied*, 485 U.S. 909, 108 S.Ct. 1085, 99 L.Ed.2d 244 (1988), *overruled on other grounds, Brown v. State*, 1994 OK CR 12, 871 P.2d 56, 62.

10. *See* cases cited in note 9.

11. *See Sanchez v. State*, 1983 OK CR 93, 665 P.2d 1218, 1219 ("The breaking necessary to constitute the crime of burglary in the first degree may be by any act of physical force, however slight, by which obstruction is forcibly removed.") (citation omitted); *see also Gable v. State*, 1967 OK CR 25, 424 P.2d 433 (syllabus); *Worchester v. State*, 1975 OK CR 111, 536 P.2d 995, 998; *Pack v. State*, 1991 OK CR 109, 819 P.2d 280, 283; *Patton v. State*, 1998 OK CR 66, 973 P.2d 270, 287, *cert. denied*, 528 U.S. 939, 120 S.Ct. 347, 145 L.Ed.2d 271 (1999).

12. *See, e.g., Lumpkin*, 219 P. at 158 ("the opening of a closed door in order to enter a building may constitute a breaking"); *Yeargin*, 14 P.2d at 432; *Fish*, 505 P.2d at 495; *Luker v. State*, 1976 OK CR 135, 552 P.2d 715, 718; *see also Finley v. State*, 1981 OK CR 3, 623 P.2d 1031, 1034 (automobile door).

13. *See, e.g., Sanchez*, 665 P.2d at 1219 (evidence sufficient for breaking where defendant pushed door further open as owner of home attempted to close it); *Brecheen*, 732 P.2d at 893 (evidence sufficient where defendant admitted pushing his

way into home when owner came to door); *Pack*, 819 P.2d at 282–83 (evidence sufficient where defendant pushed door further open and "pushed his way into the house"); *Cleary v. State*, 1997 OK CR 35, 942 P.2d 736, 745 (evidence sufficient where "at the very least, [defendant] had to push the glass storm door farther open than it was").

14. *See, e.g., Lumpkin*, 219 P. at 157–58 (reversing burglary conviction where defendant entered home through door held open by owner); *Raymer v. State*, 41 Okla.Crim. 263, 272 P. 488 (1928) (reversing burglary conviction where no evidence that doors and windows to home closed at time of entry); *Yeager v. State*, 82 Okla.Crim. 326, 169 P.2d 579, 581–82 (1946) (reversing burglary conviction where evidence suggested defendant entered through large hole in roof); *Beard v. State*, 1965 OK CR 163, 410 P.2d 567, 569–70 (reversing burglary conviction where evidence did not establish front door closed at time of theft); *Roy v. State*, 1979 OK CR 115, 602 P.2d 226, 227 (reversing burglary conviction where defendant entered home through open window, even though he earlier knocked screen off window).

15. Interestingly, the statutes defining the crimes of burglary with explosives and unlawful entry do contain references to permission/consent. *See* 21 O.S.1991, § 1438(B) (illegal entry) (requiring that entry be "without the permission of the owner or occupant"); 21 O.S.Supp.1997, § 1441 (burglary with explosives) (requiring that entry be "without the consent of the owner").

16. *See Roberts v. Territory*, 8 Okla. 326, 57 P. 840, 840–41 (Okl.1899) (reversing burglary conviction where defendant induced to enter saloon through window by one who had permission to do so and who told defendant about this authorization).

*State*,[17] this Court recognized that "[t]he absence of consent is an essential element of the crimes of robbery, larceny, burglary, train-wrecking, and other kindred crimes."[18] And in *Allen v. State*,[19] this Court recognized that a right of entry eliminated the possibility of a burglary, even if the one entering intended to commit a crime and entered through some use of force.[20]

¶ 12   The approach in Oklahoma is consistent with the common law and with that of the majority of states that have adopted the common law's "breaking and entering" concept of burglary.[21]   Recognizing that the obtaining of consent to enter negates the possibility of a breaking is also consistent with common practice in Oklahoma and common sense.   A review of our burglary jurisprudence reflects that Informations which charge burglary often specifically allege that the defendant broke into and entered the relevant premises "without the consent of" the owner or occupant.[22]   In fact, each of the three Informations filed in the current case alleged that Roberts committed first-degree burglary "by entering through an unlocked door of [the Rutherford] dwelling house and entering *without the consent of* said occupant

...."[23] In addition, burglary trials (including that of Roberts) often involve specific victim testimony that the defendant was not given permission to enter the home or building broken into, especially where the defendant was known or related to the victims.[24]

■ ¶ 13   The Committee Comments to the current uniform instruction for second-degree burglary note that "[t]he Commission has concluded ... [that] a right of entry negates the possibility of prosecution for burglary."[25]   The Comments note the possibility of "absurd results" if a right of entry were not recognized as negating the possibility of burglary.[26]   This Court agrees that just as it would be "absurd" if a "narcotics addict could be convicted of burglary by walking into his house to administer a dose of heroin to himself,"[27] it would be similarly absurd to hold that the addict's friend, who was invited into the home and who had the same intent, was committing a burglary. Entering a home or other structure with authorization to do so, whether through ownership, consent, or otherwise, simply does not constitute a "burglary," even if the entry required the use of force and even if the one entering intends to

---

17.   25 Okla.Crim. 169, 219 P. 727 (1923).

18.   *Id.* at 733 (citations omitted).

19.   28 Okla.Crim. 373, 231 P. 96 (1924).

20.   *Id.* at 97 ("If the person entering has a right to do so, although he intend to commit and actually does commit a felony, and although he may enter in such a way as would be a breaking, if he had no right to enter, it will not be burglary.") (citations omitted).

21.   *See* Judy E. Zelin, Annotation, *Maintainability of Burglary Charge, Where Entry into Building is Made with Consent*, 58 A.L.R.4th 335, 341, 345–50 (1987) ("At common law, as well as under statutes which, in accordance with the common law, require as an essential element of burglary a breaking and entering, forcible entry, or the like .... an unlimited consent to enter the premises given by the owner, occupant, or other authorized person has been held or recognized to constitute a valid defense to a charge of burglary.").

22.   *See, e.g., Goodwin v. State*, 1973 OK CR 39, 506 P.2d 571, 572; *Ryans v. State*, 1966 OK CR 153, 420 P.2d 556; *Fish*, 505 P.2d at 494.

23.   *See* 6/28/99 Information (emphasis added); 12/13/99 Amended Information (same); 1/10/00 Second Amended Information (same).   Although the trial court apparently based its modified jury instruction on these Informations, it simply and inexplicably dropped the "lack of consent" concept from the jury instruction.

24.   *See, e.g., Hall v. State*, 1976 OK CR 77, 548 P.2d 672, 673 (victims testified that they did not give defendant, who was a second cousin, permission to enter their home); *Luker*, 552 P.2d at 716 (owner testified that he did not give defendant, with whom he was "well acquainted," permission to enter his closed tavern); *Worchester v. State*, 1975 OK CR 111, 536 P.2d 995, 997 (witness testified that she did not give defendant consent to enter her home); *Goodwin*, 506 P.2d at 572 (witness testified that defendant did not have permission to enter premises); *Evans v. State*, 1969 OK CR 6, 449 P.2d 733, 734 (same).

25.   *See* Committee Comments, OUJI–CR(2d) 5–13 [Supp.2000].

26.   *Id.*

27.   *Id.* (quoting *People v. Gauze*, 15 Cal.3d 709, 125 Cal.Rptr. 773, 542 P.2d 1365, 1369 (1975)).

commit some crime once inside.[28]

■ ¶ 14 Recognizing consent to enter as a defense to burglary does not mean that the State is initially obligated to prove a lack of consent as an element in order to establish that a "breaking" has occurred. If the State has put on sufficient evidence of the use of force to obtain entry, a burglary conviction can be upheld even if the defendant puts on some evidence that he had permission to enter the relevant premises. As this Court has previously recognized, whether the defendant has committed a "breaking" under such circumstances is a question of fact for the jury.[29] In addition, direct evidence of a lack of consent to enter is not necessary to sustain a burglary conviction, even where the defendant claims permission to enter, where the circumstances of the entry provide circumstantial evidence that such consent was not given.[30] Circumstantial evidence can be used to prove a lack of consent, just as it can be used to prove some use of force to obtain entry.[31]

¶ 15 In the case at hand, the issue of consent to enter was in dispute. Warren Rutherford testified that Roberts simply appeared in his living room, while Roberts testified that Rutherford motioned for him to come in, after he knocked on the front door. Because Roberts acknowledged having to open at least one closed door to enter, the question of whether he was "breaking" into the home is entirely dependent upon the jury's factual determination of whether or

not Rutherford gave Roberts implicit permission to enter. Yet the jury instructions used in this case allowed the jury to convict Roberts of first-degree burglary even if it believed his testimony that Rutherford consented to his entry.

■ ¶ 16 Instruction No. 14 informed the jury that it could convict Roberts of first-degree burglary if the State had proven the following "elements" of burglary: (1) breaking, (2) entering, (3) a dwelling, (4) of another, (5) in which a human is present, (6) with intent to commit some crime therein, (7) by going through an unlocked door. The seventh "element" of this instruction is erroneous in a number of ways. First, it treats "going through an unlocked door," as an element of first-degree burglary, which it is not. While it is surely correct that opening an unlocked door *can* constitute a "breaking," which is an element of the crime, going through an unlocked door does not always constitute a breaking; nor do any of our prior cases suggest otherwise.[32] Second, the language of the instruction essentially directs a verdict in favor of the State, since Roberts admitted to "going through an unlocked door" and did not contest the other elements of the burglary charge. Roberts' defense was that he had not committed a "breaking," since Rutherford consented to his entry. Yet the modified jury instruction made the issue of consent irrelevant to the jury's consideration.

---

28. Recognizing consent as a defense to burglary raises the question of whether consent obtained through wrongful means, such as fraud or threats, will still negate a burglary. Although this case does not involve this situation, this Court has already recognized that "breaking" under Section 1431 includes "constructive breaking," such as when entry is obtained through "fraud, trick, or threats made while being armed with a dangerous weapon." *See Patton,* 973 P.2d at 287; *Brecheen,* 732 P.2d at 893–94. Hence consent obtained under such circumstances would not prohibit a conviction for burglary.

29. *See, e.g., Byington v. State,* 1961 OK CR 64, 363 P.2d 301, 303 ("The evidence as to breaking into the building (through a casement window) is purely circumstantial, but that was a question for the jury, and sufficient to support its verdict."); *Allen,* 231 P. at 97 (whether defendant was au-

thorized to enter area was "question of fact for the jury").

30. *See Robson v. State,* 1980 OK CR 42, 611 P.2d 1135, 1136 (affirming burglary conviction despite death of owner prior to trial, where "method used to gain entry—cutting a hole in the roof—and defendant's flight after setting off a burglar alarm ... constitute strong circumstantial evidence that the breaking was without the owner's consent").

31. *See Potter v. State,* 1954 OK CR 12, 266 P.2d 647, 648 (evidence sufficient to show "breaking" where defendant "either opened the window and came in by that means or else he must have had the yet undiscovered power to pass through walls without difficulty").

32. *See* cases cited *supra* in note 12.

¶ 17 Under the circumstances of this case, we find plain error in the first-degree burglary instruction that was given to Roberts' jury. We further find that, in the context of this case, this error cannot be considered harmless.[33]

¶ 18 Because consent to enter and authorization to enter are valid defenses to a charge of burglary, a jury should be instructed on this issue when it is sufficiently raised by the evidence at trial. Furthermore, because consent to enter and authorization to enter are defenses, the burden of proof rests with the State to show the lack of such consent or authorization, where the issue has been adequately raised by the evidence. Hence if a defendant puts on evidence that his entry into the relevant premises was authorized or consented to by an owner or occupant of the premises, or if evidence introduced by the State raises the issue, the trial court must instruct the jury regarding this defense.

¶ 19 We hereby adopt the following uniform jury instruction, which is to be given in all first-degree burglary cases where the evidence adduced at trial sufficiently raises the issue of consent or authorization to enter:

A person who enters a dwelling with the consent or authorization of an owner or occupant of that dwelling does not commit a "breaking" and therefore cannot be convicted of burglary in the first degree. Such consent or authorization to enter is adequate where it is given by one who has actual authority to give it or by one who reasonably appears to have such authority.

It is the burden of the State to prove beyond a reasonable doubt that the defendant did not enter with the consent or authorization of an owner or occupant. If you find that the State has failed to sustain that burden, then the defendant must be found not guilty.

Because consent or authorization to enter will likewise nullify the "breaking" element in cases charging second-degree burglary, under 21 O.S.1991, § 1435, or burglary with explosives, under 21 O.S.Supp.1997, § 1441, this same instruction should be given, in appropriately modified form, in all such cases, whenever the evidence presented at trial sufficiently raises the issue of consent or authorization. Whether sufficient evidence has been put on to raise the defense is a question of law to be decided by the trial court. If sufficient evidence has been put on to raise the defense, however, it is the responsibility of the trial court to ensure that the instruction is given.

¶ 20 In his second proposition of error, Roberts argues that the trial court erred when it failed to instruct the jury on the lesser-included offense of illegal entry, under 21 O.S.1991, § 1438(A). Because this Court has already found that Roberts' burglary conviction must be reversed, we need not decide this related claim. This Court notes, however, that illegal entry has been recognized as a lesser-included offense of burglary,[34] and that under the circumstances of this case—where the defendant is contesting the "breaking" element of first-degree burglary—the jury should be instructed on illegal entry.[35]

---

**33.** The Court recognizes that the current uniform instruction for first-degree burglary eliminates the seventh element of the former uniform instruction, which had contained the various specific methods of "breaking" articulated in Section 1431. *See* OUJI–CR(2d) 5–12 *and* Committee Comments [Supp.2000]. This change appears to be in keeping with the burglary jurisprudence of this Court, which has consistently focused the "breaking" inquiry upon whether force was used to obtain entry, rather than on the specific modes of entry listed in Section 1431. Hence this new uniform instruction should be used in any re-trial of the current case and in all other future first-degree burglary trials. The change in the uniform instruction has no impact on the result of the current appeal,

however, since the question here was not how Roberts broke in, but whether he did so.

**34.** *See Kaulaity v. State*, 1993 OK CR 40, 859 P.2d 521, 523 (holding "illegal entry is a lesser included offense of burglary and attempted burglary" and overruling prior contrary cases); *see also* Notes on Use, OUJI–CR(2d) 5–16, ("In the opinion of the Commission, illegal entry differs from the other crimes in Chapter 58 of Title 21 primarily in that breaking is not an element of the crime.").

**35.** *See Kaulaity*, 859 P.2d at 523 (reversing burglary conviction for failure to instruct on illegal entry, where defendant could have entered build-

¶ 21 In his third proposition of error, Roberts asserts that prosecutorial misconduct rendered his trial unfair. The Court has examined the challenged remarks and does not find that they were improper or that they rendered Roberts' trial unfair.

¶ 22 This Court further finds that the reversal of Roberts' first-degree burglary conviction necessitates the reversal of his conviction for possession of a weapon while committing a felony (Count III). The jury was instructed that it could convict Roberts of this crime only if it found him guilty of either the first-degree burglary charge or the kidnapping charge. Because the jury acquitted Roberts of kidnapping, his conviction for possessing a weapon while committing a felony cannot withstand the reversal of his conviction for the underlying felony, first-degree burglary.

### Decision

¶ 23 The Judgments and Sentences of the District Court on Count I (first-degree burglary) and Count III (possession of a weapon while committing a felony) are **REVERSED** and **REMANDED**. The Judgment and Sentence of the District Court on Count IV (assault and battery with a dangerous weapon) is **AFFIRMED**.

JOHNSON, V.P.J., and STRUBHAR, and LILE, JJ., concur.

LUMPKIN, P.J., dissents.

LUMPKIN, Presiding Judge: Dissents.

¶ 1 I dissent to the reversal of this case for the following reasons. The Court has *sua sponte* raised the issue of instructing the jury on consent as a defense to the crime of burglary. In the appellate brief, Appellant argues the trial court erred in modifying Instruction No. 14 by improperly including the seventh element. The issue of a jury instruction on consent was not raised on appeal. Accordingly, it is inappropriate for this Court to raise the issue on its own and decide the case on that basis. Further, the issue of consent as a defense was not raised at trial as Appellant neither requested an

instruction on consent nor objected to the instruction given. By failing to raise the issue at trial, Appellant has failed to preserve the issue for appellate review. *See Shields v. State,* 1971 OK CR 454, ¶ 11, 490 P.2d 1390, 1392 (record reflected appellant did not request a trial instruction on consent as a bar to breaking, therefore, he waived consideration of the issue for appellate review). Therefore, our review is limited to the issue raised on appeal, *i.e.,* whether the inclusion of the seventh element in Instruction No. 14, was plain error. *See Simpson v. State,* 1994 OK CR 40, ¶ 11, 876 P.2d 690, 695.

¶ 2 In Instruction No. 14, the trial court added a seventh element "going through an unlocked door." This element is based upon the language in 21 O.S.1991, § 1431(2) (" ... [b]y breaking in any other manner, ... "). The inclusion of this element in the jury instruction merely restated the first element of "breaking." Therefore, the instruction accurately stated the applicable law and did not constitute plain error. *See Kinsey v. State,* 1990 OK CR 64, ¶ 9, 798 P.2d 630, 633 ("this Court will not interfere with a judgment as long as the instructions, when considered as a whole, fairly and accurately state the applicable law").

¶ 3 I do agree with the Court that the issue of consent or lack of consent is not an element of the crime in this case. I also agree that consent or lack of consent is an affirmative defense that must be raised by a defendant's presentation of sufficient evidence, either through the prosecution witnesses or witnesses called by the defense, to warrant an instruction on the defense. Sufficient evidence to support the consent defense was not presented in this case to allow the trial judge to even "divine" it as being a required instruction. Regardless, as I stated previously, Appellant did not raise this issue either at trial or on appeal. Therefore, this Court should not "divine" it as one for him.

¶ 4 I also agree that when a consent defense or a lack of consent defense is properly raised with sufficient evidence, an instruction

ing through open window); *McCullough v. State,* 1983 OK CR 135, 669 P.2d 311, 312–13 (same,

where defendant could have entered motel room through open door).

on the defense should be given. *See White v. State*, 1998 OK CR 69, ¶¶ 3–7, 973 P.2d 306, 312–13 (Lumpkin, J. Specially Concur);[1] *Kinsey*, 798 P.2d at 633.[2] However, the Court's proffered instruction does not correctly state the law as set out in the opinion. The State does not have the burden to prove beyond a reasonable doubt that the defendant did not enter without the consent or authorization of an owner or occupant until the defendant has presented sufficient evidence the entry was based on consent. For this reason, the instruction should also set out that it is the burden of the defendant to present the affirmative defense of consent. If sufficient evidence of consent to enter has been raised, it is the State's burden to prove beyond a reasonable doubt that the defendant did not enter with consent or authorization. If the jury finds the State has failed to sustain its burden of proof, then the defendant must be found not guilty. *See e.g.* OUJI–CR (2d) 8–33 (defense of insanity—burden of proof); OUJI–CR (2d) 8–38 (defense of voluntary intoxication—burden of proof); OUJI–CR (2d) 8–49 (defense of self-defense-burden of proof).

---

1. In *White*, 973 P.2d at 312–13, it was stated:
   "[B]efore a defendant is entitled to an instruction on the defense …, he must establish a prima facie case of the … elements of that defense." *Michigan v. Lemons*, 454 Mich. 234, 562 N.W.2d 447, 454 (1997). Prima facie evidence is defined as:
   Evidence good and sufficient on its face. Such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient … to sustain a judgment in favor of the issue which it supports.

See also *Jackson v. State*, 1998 OK CR 39, ¶ 14, 964 P.2d 875, 901–902 (Okl.Cr.1998) (Lumpkin, J. concurring in results).

2. "Legal defenses are matters which go to the legal exoneration of guilt or evidence which may reduce the charge to a lesser included offense. Once presented, it is then the responsibility of the trial judge to determine if the evidence is sufficient to support the instruction. The defendant is then entitled to an instruction on any theory of defense supported by the evidence, as long as that theory is tenable as a matter of law." *Kinsey*, 798 P.2d at 633.